**FEDERAL ELECTION COMMISSION,**
**Plaintiff–Appellee,**

v.

**Harvey FURGATCH,**
**Defendant–Appellant.**

No. 88–6047.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1989.

Decided March 8, 1989.

H. Richard Mayberry, Jr., Washington, D.C., for defendant/appellant.

Jacqueline Jones–Smith, Washington, D.C., for plaintiff/appellee.

Before FLETCHER, PREGERSON and LEAVY, Circuit Judges.

FLETCHER, Circuit Judge:

After this court rejected Furgatch's statutory and constitutional defenses to the Federal Election Commission's civil action against him, *FEC v. Furgatch*, 807 F.2d 857 (9th Cir.1987), the district court on remand granted summary judgment in favor of the Federal Election Commission (FEC). Furgatch appeals from the portion of the district court's order assessing a civil penalty of $25,000 and permanently enjoining him from future similar violations of the Federal Election Campaign Act (FECA or the Act). We affirm in part, reverse in part, and remand.

I

Shortly before the 1980 presidential election, Furgatch placed full page advertisements in the New York Times (October 28, 1980) and the Boston Globe (November 1,

1980). The ads criticized President Carter and urged, "Don't let him do it." The two ads together cost Furgatch $25,008. The Times ad stated that it was not authorized or paid for by a candidate, but the Globe ad contained no such disclaimer. Furgatch did not report his expenditure on the ads to the FEC.

On March 25, 1983, the FEC filed a complaint against Furgatch, alleging that he had violated §§ 434(c) and 441d of the FECA. § 434(c)(2) states that "[a]ny independent expenditure ... aggregating $1,000 or more made after the 20th day, but more than 24 hours, before any election shall be reported [to the FEC] within 24 hours after such independent expenditure is made." § 441d states that an advertisement that is an independent expenditure must state whether or not the candidate authorized or paid for the advertisement.

The district court dismissed the FEC's complaint because it found that Furgatch's newspaper ads were not independent expenditures and thus were not covered by these two provisions. We reversed. Furgatch urged the district court on remand to find that the ads were not independent expenditures "notwithstanding the decision of the Court of Appeals." Supp. ER 1–2. Furgatch filed an expenditure report with the FEC on June 3, 1988, 38 days after the district court ordered him to do so.

Furgatch now argues that (1) the district court abused its discretion in assessing a $25,000 civil penalty; (2) the relevant statutory provision, § 437g(a)(6)(B), authorizes an injunction only when the defendant is about to violate the FECA; (3) the FEC made no such showing; (4) the injunction violates Rule 65(d)'s specificity requirement; (5) the injunction violates Rule 65(d)'s requirement of a statement of reasons for the injunction. We have jurisdiction pursuant to 2 U.S.C. § 437g(a)(9).

## II

▌ Section 437g(a)6)(B) permits a court to assess a civil penalty "which does not exceed the greater of $5,000 or an amount equal to any contribution or expenditure involved in such violation." The total amount of expenditures involved in Furgatch's violation was $25,008, and the penalty assessed was $25,000. Furgatch argues that the district court abused its discretion by imposing what is essentially the statutory maximum penalty. The district court's assessment of a civil penalty is reviewed for an abuse of discretion. *FEC v. Ted Haley Congressional Committee*, 852 F.2d 1111, 1116 (9th Cir.1988).

Because there are very few cases discussing the factors which should guide a court's discretion in imposing a civil penalty under § 437g(a)6)(B), we seek guidance from cases that deal with the imposition of discretionary civil penalties under other federal statutes. According to these cases, in determining the amount of the penalty, a district court should consider (1) the good or bad faith of the defendants; (2) the injury to the public; (3) the defendant's ability to pay; and (4) the necessity of vindicating the authority of the responsible federal agency. *United States v. Danube Carpet Mills, Inc.*, 737 F.2d 988, 993 (11th Cir.1984).[1]

Analysis of these factors in this case support the district court's decision to assess a $25,000 penalty. Furgatch refused to comply with the FEC's request for a report on the 1980 expenditures until the district court on remand ordered him to do so. As the FEC notes, Furgatch's filing of

---

1. *Danube* and the other cases involving the assessment of civil penalties under federal statutes also identify "the desire to eliminate the benefit derived from the violation" as a relevant factor. These cases all involve statutes regulating the activities of businesses, such as the Flammable Fabrics Act. *See, e.g., Danube Carpet Mills, Inc.*, 737 F.2d at 993 (upholding civil penalties for violations of this Act). In these cases, the business defendant gained from its violations of federal regulations. As the FEC suggests, persons who violate the reporting and disclosure provisions of the FECA do not normally derive any tangible benefit from these violations. Since the "desire to eliminate the benefit derived from the violations" never would support the imposition of a civil penalty for violations of these provisions, it is not a helpful factor for courts in deciding whether a particular violation warranted the imposition of a particular penalty.

this report occurred over a year after this court definitively rejected his defenses to the FEC's action against him. The district court was free to conclude that the absence of good faith efforts by Furgatch to undo or cure his violations is indicative of the need for a large penalty to deter future wrongdoing.[2] *See, e.g., FEC v. Ted Haley Cong. Commission,* 852 F.2d at 1116 (upholding the district court's decision not to assess a civil penalty, which was based in part on the "'rapid repayment of the [allegedly improper] loan by the former candidate from personal funds'") (quoting district court opinion); *Danube Carpet Mills, Inc.,* 737 F.2d at 994 (considering the defendant's failure to take "prompt remedial action upon discovery of the violations" in upholding civil penalty). Moreover, Furgatch's failure to comply with the FEC's demand for an expenditure report is relevant to an assessment of the need to vindicate the agency's authority.

The "public harm" factor also supports imposition of the $25,000 penalty. The importance of the FECA's reporting and disclosure provisions,[3] and the difficulty of proving that violations of them actually deprived the public of information, justify a rule allowing a district court to presume harm to the public from the magnitude or seriousness of the violation of these provisions. *See United States v. Reader's Digest Association, Inc.,* 662 F.2d 955, 969 (3d Cir.1981) (court presumed actual deception of the public from the fact that Reader's Digest distributed materials in violation of a consent order); *Danube Carpet Mills, Inc.,* 737 F.2d at 994 (court presumed harm to the public from the fact that the defendant distributed carpet which failed to conform with the flammability standard). In this case, the violations were clearly serious, and serious public harm should therefore be presumed. A full-page pre-election ad in the Boston Globe attracts many readers; these readers deserve to know whether a candidate authorized the ad. Further, according to the FEC, Furgatch's $25,008 was the largest independent expenditure in opposition to a presi-

---

**2.** The FEC argues that, since the statutory penalty scheme itself adjusts for the defendant's intent, a district court cannot be required to reduce the penalty on the basis of intent. The FEC specifically notes that, while § 437g(a)(6)(B) authorizes a civil penalty of up to $5000 or the amount of the contribution or expenditure involved, § 437g(a)(6)(C) authorizes a civil penalty of up to $10,000 or twice the amount of the contribution or expenditure involved if the court concludes that the violation was "knowing and willful." However, the statutory penalty scheme expresses Congress's intent to cap penalties for knowing and willing violations at twice the amount for all other violations. There is nothing in the language of the provision or the legislative history which indicates that a district court cannot consider the defendant's intent in deciding whether or not to assess a penalty which falls within the lower cap. If anything, the statutory scheme might suggest Congress's belief that intent *is* relevant in assessing the propriety of any particular civil penalty. Moreover, we recently upheld a district court's decision not to impose a civil penalty under § 437g(a)(6)(B) which was based in part on "'the clear innocence of [appellee's] motives.'" *FEC v. Ted Haley Cong. Commission.,* 852 F.2d 1111, 1116 (9th Cir.1988) (quoting the district court opinion). *See also FEC v. California Medical Association,* 502 F.Supp. 196, 204 (N.D.Cal.1980).

**3.** In *FEC v. Furgatch,* 807 F.2d 857, 862 (9th Cir.1987), we explained that the FECA's reporting and disclosure provisions serve the critical purpose of providing citizens with information necessary for meaningful political participation.

> The first [purpose of these provisions is] that of keeping the electorate fully informed of the sources of campaign-directed speech and the possible connections between the speaker and individual candidates, derives directly from the primacy concern of the First Amendment. The vision of a free and open marketplace of ideas is based on the assumption that the people should be exposed to speech on all sides, so that they may freely evaluate and choose from among competing points of view. One goal of the First Amendment, then, is to ensure that the individual citizen has available all the information necessary to allow him to properly evaluate speech.
>
> Information about the composition of a candidate's constituency, the sources of a candidate's support, and the impact that such financial support may have on the candidate's stand on the issues or future performance may be crucial to the individual's choice from among the several competitors for his vote. The allowance of free expression loses considerable value if expression is only partial. Therefore, disclosure requirements, which may at times prohibit the free speech that is so clearly protected by the First Amendment, are indispensable to the proper and effective exercise of First Amendment rights.

dential candidate by any individual in the country in the 1980 election.

Finally, Furgatch concedes that his ability to pay was a factor which "did not weigh in favor of mitigation of the penalty." Appellants Brief at 29, n. 8.

## III

Furgatch argues that the district court erred in granting an injunction pursuant to 2 U.S.C. § 437g(a)(6)(B) because that section permits a court to issue an injunction only when the defendant "is about to commit" a violation of the Federal Election Campaign Act. Section 437g(a)(6)(B) provides that "[i]n any civil action instituted by the Commission under subparagraph (A), the court may grant a permanent or temporary injunction, restraining order, or other order, including a civil penalty which does not exceed the greater of $5,000 or an amount equal to any contribution or expenditure involved in such violation, upon a proper showing that the person involved has committed, or is about to commit (if the relief sought is a permanent or temporary injunction or a restraining order), a violation of this Act...." 2 U.S.C. § 437g(a)(6)(B) (West 1985 & Supp.1988). Furgatch notes that the phrases "has committed" and "or is about to commit" are set apart by a comma. He then reasons that the juxtaposition of the phrase "is about to commit" and the parenthetical phrase "if the relief sought is a permanent or temporary injunction or a restraining order" demonstrates Congress's intent to limit injunctive relief under § 437g(a)(6)(B) to cases where the "person involved" is "about to" violate the Act.

The Federal Election Commission argues that § 437g(a)(6)(B) gives a court the discretion to issue an injunction on the basis of either a past or threatened future violation. The FEC notes that the parenthetical phrase was inserted by Congress as part of the 1980 amendments to the Act. This phrase, the FEC contends, was intended merely to clarify that a civil penalty is not available where the court finds that the "person involved" has not yet committed a violation of the Act. As the FEC notes,

§ 437g(a)(6)(B)'s predecessor provision could have been read literally to authorize a civil penalty when a person is about to commit a violation of the Act. *See* § 313(a)(5)(C) of Pub.Law 94–283, 90 Stat. 483 ("the court may grant permanent or temporary injunction, restraining order, or other order, including a civil penalty ... upon a proper showing that the person involved has engaged or is about to engage in a violation of this Act ...").

The plain language of the statute does not indicate whether Congress intended to limit injunctive relief to cases involving persons who are about to violate the Act. The language of the statute does not clearly indicate whether the parenthetical phrase modifies only the "about to commit" phrase or whether it modifies both the "has committed" and "about to commit" phrases. Moreover, the "is about to" phrase and the parenthetical phrase read together simply state that a district court may grant an injunction if the defendant is about to violate the Act. These two phrases read together do not show that the converse is also true—that a district court may not grant an injunction if the "person involved" is not about to violate the Act. While the language of the statute provides only limited guidance in this case, other sections of the Act and the legislative history persuade us that Congress did not intend § 437g(a)(6)(B) to be read to limit injunctive relief to cases where the person involved is about to commit a violation of the Act. Our acceptance of the FEC's construction of the statute is also premised on our recognition that where a statute is "ambiguous" with respect to a specific issue, the court should defer to the agency's construction of the statute as long as it is "permissible." *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). *See also FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 37, 102 S.Ct. 38, 45, 70 L.Ed.2d 23 (1981) (explaining that the FEC "is precisely the type of agency to which deference should presumptively be afforded" because the FEC is inherently bipartisan and has "primary and substantial responsibility for

administering and enforcing the Act" and authority to "formulate general policy with respect to the administration of this Act").

Section 437g(a)(6)(B) was enacted in 1980 along with a number of other amendments to the Act. Prior to the 1980 amendments, the Act explicitly gave the FEC the authority to seek an injunction on the basis of either a past or threatened future violation of the Act. *See* § 313(a)(5)(B) of Pub. Law 94–283, 90 Stat. 484 ("the Commission may, if the Commission determines that a violation has occurred or is about to occur, institute a civil action for relief, including a permanent or temporary injunction ..."). When Congress amended the Act in 1980, it did not limit the Commission's authority to seek injunctive relief on the basis of a past violation. *See* 2 U.S.C. 437g(a)(6)(A) (West 1985 & Supp.1988) ("If the Commission is unable to correct or prevent any violation of this Act ... the Commission may ... institute a civil action for relief, including a permanent or temporary injunction...."). Since Congress in 1980 clearly affirmed the Commission's authority to seek an injunction on the basis of a past violation, we see no reason to conclude that Congress at the same time intended to limit courts' authority to grant injunctions to cases in which the person involved "is about to" commit a violation of the Act. Our acceptance of Furgatch's interpretation of § 437g(a)(6)(B) would in part negate § 437g(A)(6)(A) and thus violate the fundamental principle of statutory construction that "[i]nterpretive constructions which would render some words surplusage ... are to be avoided." *Pacific Mutual Life Insurance Co. v. American Guaranty Life Insurance Co.*, 722 F.2d 1498, 1500 (9th Cir.1984).

The legislative history of § 437g(a)(6)(B) also demonstrates the implausibility of Furgatch's interpretation. As Furgatch admits, Section 437g(a)(6)(B)'s predecessor provision, § 313(a)(5)(C), clearly permitted a court to grant an injunction on the basis of past *or* threatened future violations. *See* § 313(a)(5)(C), Pub. Law 94–283, 90 Stat. 483 ("the court may grant a permanent injunction ... upon a proper showing that the person involved has engaged or is about to engage in a violation of this

Act...."). According to Furgatch, Congress intended § 437g(a)(6)(B) to reduce markedly the availability of injunctive relief by limiting such relief to cases in which a violation of the Act is imminent. However, when Congress enacted § 437g(a)(6)(B), Congress indicated that § 437g(a)(6)(B) was substantially identical to its predecessor provision.

The House report on the 1980 amendments states without elaboration that § 437g(a)(6)(B) "incorporates section 313(a)(5)(C) of the current Act." *See* H.R. Rep. No. 96–422, 96th Cong., 1st Sess., 22 *reprinted in* [1979] U.S.Code Cong. & Admin.News pp. 2860, 2882. The word "incorporates" is used in the report to refer to amendments which either repeat or merely clarify, rather than substantively change, the original provisions. For example, the report states that "Section (7) of the bill incorporates section 313(a)(8) of the current Act." *Id.* Section 313(a)(8) and Section 7 both provide only that "subpoenas for witnesses who are required to attend a United States district court may run into any other district." Moreover, the report specifically notes any substantive changes made by the amendments. *See, e.g. id.* ("Section 309(c) remains the same with respect to the requirement of the Attorney General to report to the Commission regarding apparent violations referred to the Attorney General by the Commission. The authority of the Commission to prepare and publish reports relating to the status of such referrals is removed.").

Furgatch also argues that Congress must have intended § 437g(a)(6)(B) to require a showing that the defendant "is about to commit" a violation because that requirement is consistent with the federal common law regarding statutory injunctions. However, in cases involving statutes which give the courts the discretion to issue injunctions on the basis of past violations, the federal courts have consistently held that the party moving for the injunction must show only that there is a "likelihood" of future violations. *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir.1980). *See also United States v. W.T. Grant Co.*, 345

U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Although the requirement that there is a likelihood of future violations is a substantial requirement, *see infra,* it is clearly less demanding than the requirement of imminency that Furgatch proposes.

## IV

■ Although we conclude § 437g(a)(6)(B) does not limit injunctive relief to cases in which the person involved is about to commit a violation of the Act, we stress that a district court can exercise its discretion to issue an injunction pursuant to this provision only if there is a likelihood of future violations. Because the Act implicates First Amendment concerns about political expression, it is important that courts avoid granting injunctive relief which is unnecessary to further the purposes of the Act. *See FEC v. Furgatch,* 807 F.2d 857, 862 (9th Cir.1987).

■ There is ample support in the record for a finding that Furgatch is likely to commit future violations of the Act. A defendant's persistence in claiming that (and acting as if) his conduct is blameless is an important factor in deciding whether future violations are sufficiently likely to warrant an injunction. *See CFTC v. CO Petro Marketing Group, Inc.,* 680 F.2d 573, 582 n. 16 (9th Cir.1982) (holding that a permanent injunction was appropriate because "CO Petro consistently maintained that its conduct was blameless"); *SEC v. Murphy,* 626 F.2d at 655; *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1100 (2d Cir.1972) ("The fact that the appellants continued to maintain that their past conduct was blameless was a factor appropriately considered by the district court in assessing the need for an injunction.").

Furgatch manifested his belief in the blamelessness of his conduct by rejecting the FEC's attempts at conciliation, by urging the district court to reject this court's opinion in *FEC v. Furgatch,* 807 F.2d 857 (9th Cir.1987), as a "manifest injustice," and by failing to file a report on his 1980 campaign expenditures until after the district court on remand ordered him to do so. Moreover, Furgatch has never given any assurances of future compliance.[4] However, despite the substantial evidence, we are unwilling to sustain the injunction without explicit findings by the district court.

■ Further, while the record would support a finding that Furgatch is likely to commit future violations of the Act, the record does not justify the imposition of a permanent injunction. Furgatch has not demonstrated the sort of extraordinary intransigence and hostility toward the FEC and the Act which would support the inference that he will remain likely to violate the Act for the rest of his life. On remand, the district court must limit the injunction to a reasonable duration.

## V

We remand to the district court for compliance with all of the requirements of Fed. R.Civ.P. 65(d). Rule 65(d) requires that the court set forth reasons for the issuance of an injunction and that the injunction "shall be specific in terms" and "shall describe in reasonable detail ... the act or acts sought to be restrained." Challenges to an injunction pursuant to Rule 65(d) are reviewed de novo. *United States v. Holtzman,* 762 F.2d 720, 726 (9th Cir.1985).

■ As discussed above, the district court cannot issue an injunction unless there is a likelihood that Furgatch will com-

---

**4.** We recognize that, where a statute is "complex" and "difficult to interpret," a defendant should not be "punished" by means of a permanent injunction simply because the defendant vigorously advanced a debatable (albeit unsuccessful) interpretation. *See FEC v. California Medical Association,* 502 F.Supp. 196, 204 (N.D. Cal.1980) (factor in deciding whether to issue an injunction is whether "the task faced by the defendants in complying with the statute was complex and whether the statute was difficult to interpret"); *FEC v. Committee for a Constitutional Presidency–McCarthy '76,* Fed. Elec. Campaign Financing Guide (CCH) ¶ 9074 at 50, 632 (D.D.C.1979) (same). In this case, however, Furgatch went beyond what is properly regarded as vigorous advocacy of a debatable position. Even after this court definitively rejected Furgatch's statutory and constitutional claims, he urged the district court to accept them and continued to ignore the FEC's request for the expenditure report.

mit future violations and that likelihood is based on appropriate findings supported by the record. Although Rule 65(d) does not require the district court to make an explicit finding that future violations are likely, the district court must at least make explicit findings from which a finding of a likelihood of future violations could be inferred. *See Brock v. Big Bear Market No. 3*, 825 F.2d 1381, 1384 (9th Cir.1987) ("[Big Bear] cites *Wells Benz, Inc. v. United States*, 333 F.2d 89 (9th Cir.1964) for the proposition that findings of fact will be implied to sustain a judgment. However, *Wells Benz* actually states that 'whenever, from *facts found,* other facts may be inferred which will support the judgment, such inferences will be deemed to have been drawn.' ... The district court made no findings of fact from which we can infer a likelihood of future compliance."). *Compare Ben David v. Travisono*, 495 F.2d 562, 564–65 (1st Cir.1974) ("expansive" injunction against "brutalization" of prisoners must be based "upon express findings that the prohibited conduct is likely.")

The district court did not make explicit findings which would support the inference that there is a likelihood of future violations. While "the commission of past illegal conduct is highly suggestive of the likelihood of future violations," "such illegal activity without more, does not automatically justify the issuance of an injunction." *SEC v. Management Dyn., Inc.,* 515 F.2d 801, 807 (2d Cir.1975). The district court explicitly found only that Furgatch committed "past illegal conduct" by failing to include a disclaimer concerning candidate authorization in the Boston Globe advertisement and by failing to report his expenditures on the two advertisements. The district court did not make any explicit findings regarding the factors that are important in predicting the likelihood of future violations.[5]

The injunction also violates Rule 65(d)'s requirement that an injunction decribe "in reasonable detail" the prohibited conduct. This rule "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974).

The injunction permanently enjoins Furgatch from "future similar violations of the Federal Election Campaign Act of 1971, as amended." ER 2. The phrase "similar violations" is susceptible to a number of different interpretations, including violations of the specific provisions at issue in Furgatch's case (§ 434(c) and § 441d) which involve similar facts to those in Furgatch's case, all violations of these two provisions, or violations of any provision of the Act which involve similar facts to those in Furgatch's case. *See generally Gulf Oil v. Brock*, 778 F.2d 834, 843 (D.C.Cir. 1985) (noting that the term similar "admits of some variation").

In deciding whether an injunction is impermissibly vague for the purposes of Rule 65(d), we are not limited to the language of the injunction. "[T]he fair notice requirement of Rule 65(d) must be applied in light of the circumstances surrounding [the injunction's] entry: the relief sought by the moving party, the evidence produced at the hearing of the injunction, and the mischief that the injunction sought to prevent." *United States v. Christie Industries, Inc.,* 465 F.2d 1000, 1007 (3d Cir.1971). In this case, the trial proceedings focused quite narrowly on only two provisions of the Act, §§ 434(c) and 441d, and it is therefore reasonable to assume that the district court was referring only to those two provisions when it enjoined "similar violations." However, the district court may have been referring to all violations of these two pro-

---

5. These factors include the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the extent to which the defendant's professional and personal characteristics might enable or tempt him to commit future violations; and the sincerity of any assurances against future violations. *See SEC v. Murphy,* 626 F.2d at 655 (discussing factors); *CFTC v. Hunt,* 591 F.2d 1211, 1220–21 (7th Cir.1979) (same).

visions or only violations that involved facts similar to those in Furgatch's past two violations. Moreover, even if we assumed that the injunction refers only to future violations of these provisions which are factually similar to Furgatch's past violations, we would have no way of specifying which factual similarities the district court regarded as relevant. In sum, because the injunction "is susceptible to more than one interpretation.... [and] therefore fails to satisfy the exacting requirements of Rule 65(d)," *see Common Cause*, 674 F.2d 921, 926 (D.C.Cir.1982), we remand to the district court for a statement of the precise conduct prohibited by the injunction.

### VI

In conclusion, we affirm the district court's assessment of a $25,000 civil penalty. We reject Furgatch's statutory challenge to the injunction, but remand for the district court to limit the injunction to a reasonable duration, state the reasons for the injunction, and specify the precise conduct prohibited by the injunction.

Affirmed in part; reversed in part; and remanded. Each side shall bear its own costs.