**TAHOE REGIONAL PLANNING AGENCY, Plaintiff,**

v.

**TERRACE LAND COMPANY, INC., Defendant.**

**No. CV–N–87–502–ECR.**

United States District Court, D. Nevada.

June 17, 1991.

Louis R. Doescher, Carson City, Nev., for plaintiff.

J. Stewart White, Carson City, Nev., and Kim Hagerty, Inc., Incline Village, Nev., for defendant.

MEMORANDUM DECISION
AND ORDER

EDWARD C. REED, Jr., Chief Judge.

TRPA initiated this action to enforce its ordinances by filing a complaint for injunctive relief and civil penalties. TRPA alleged that defendants C.E. Metrailer ("Metrailer") and Terrace Land Company ("Terrace") graded a road and cut trees on an environmentally sensitive parcel over which defendants owned an easement and that such work was done in violation of TRPA's ordinances and permit requirements.

The Tahoe Regional Planning Compact was adopted and enacted in 1969 and extensively amended in 1980 by the States of California and Nevada and ratified by the U.S. Congress (*Pub.L. 96–551, 94 Stat. 3233, 1980*).

TRPA is the agency charged under the Compact with adopting and implementing a regional plan and ordinance for the Lake Tahoe Basin to achieve and maintain cer-

**508**

tain environmental carrying capacities while providing opportunities for orderly growth and development consistent with those capacities. Compact, Article I(b). The Compact further provides that if an activity undertaken by an individual or public agency "may substantially affect the land, water, air, space or any other natural resources of the region", then such activity is a "project" requiring TRPA review and approval. Compact, Articles II(h) and VI(b). TRPA ordinances regulate such activities as tree cutting, grading and residential construction.

Defendants filed a counterclaim which alleged that TRPA had incorrectly classified defendants' parcel as environmentally sensitive and that TRPA had acted improperly with respect to a building application for a single family residence submitted by defendants in 1982. Defendants sought monetary damages for inverse condemnation and other constitutional claims.

The Court has jurisdiction of this action under Article VI(j) of the Tahoe Regional Planning Compact, P.L. 96–551, 94 Stat. 3233; NRS § 277.200 and 28 U.S.C. § 1331.

Plaintiff filed a motion for partial summary judgment on May 1, 1989, seeking to have the counterclaim dismissed for failure to state a claim and to declare that a violation of TRPA's ordinances had occurred. By order dated January 2, 1990, the Court granted plaintiff's motion, dismissed the counterclaim and found that defendants had violated TRPA's ordinances by grading a roadway and cutting trees without permits from TRPA.

On April 6, 1990, plaintiff moved the Court for an order that defendants were not entitled to a jury trial on the assessment of a civil penalty. Defendants opposed the motion. On April 10, 1990, the Court found that defendants were not entitled to a jury trial on the amount of civil penalty but that there was a right to a jury trial on the issue of "who was liable", i.e., whether Metrailer was acting on his own behalf or on behalf of the corporation, Terrace Land Company. *Tull v. U.S.*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987).

Defendants later stipulated to a waiver of a jury trial on the liability issue.

Pursuant to Fed.R.Civ.P. 54(b) and 28 U.S.C. § 1292(b), defendants orally moved for certification of an interlocutory appeal of the Court's grant of plaintiff's motion for partial summary judgment during a telephonic hearing on August 15, 1990. The oral motion was denied by order dated August 16, 1990.

The bench trial on the issue of civil penalties was conducted on August 16 and 17, 1990, and October 4, 1990. The issues to be adjudicated at trial were: (1) whether Metrailer acted on his own behalf or on behalf of the corporation, Terrace Land Company, and (2) whether civil penalties should be imposed and if so in what amount.

On August 27, 1987, defendant Metrailer, president of Terrace Land Company, caused a roadway approximately 400 feet in length and averaging 17 feet in width to be constructed on a parcel of land adjacent to a five-acre parcel owned by defendants off of Champagne Road, Incline Village, Washoe County, Nevada. The affected properties are in the Lake Tahoe Basin on a hillside above the Lake and are subject to the jurisdiction of the Tahoe Regional Planning Compact and TRPA. Defendants own two vacant parcels in the vicinity of Champagne Road: one five-acre parcel and one seven-acre parcel. This case relates to the five-acre parcel.

The roadway was constructed on an easement owned by Terrace, which extended over property owned by the U.S. Forest Service and a neighbor, Mike Love. Part of the easement and part of the roadway may also be located on Terrace's parcel. The construction of the roadway involved moving at least 175 cubic yards of earthen materials.

Defendants have endeavored to characterize the roadway as a footpath but a footpath would require only a couple of feet of width to allow passage. The access as constructed would permit the passage of a motor vehicle. It was built in a fairly sophisticated fashion with a crown and

with a back-slope toward the mountain. It is a good vehicle driveway.

The Court previously found, in its January 2, 1990, decision granting partial summary judgment for TRPA, that the roadway was built in clear violation of TRPA ordinances, Section 71.2, removing trees without approval, and Sections 64.1 and 4.10, grading without approval.

Having determined that violations exist, the Court must decide if a civil penalty should be imposed upon Metrailer or Terrace, or both, and, if so, in what amount. The Court must also decide if the injunction requested by TRPA should be granted.

■ Article VI(1) of the Compact provides that:

Any person who violates any provision of this compact or of any ordinance or regulation of the agency or of any condition of approval imposed by the agency is subject to a civil penalty not to exceed $5,000. Any such person is subject to an additional civil penalty not to exceed $5,000 per day, for each day on which such a violation persists. In imposing the penalties authorized by this subdivision, the court shall consider the nature of the violation and shall impose a greater penalty if it was willful or resulted from gross negligence than if it resulted from inadvertence or simple negligence.

Although the Compact appears to limit the Court to the above two factors, the Court may in its determination of the nature of the violation consider such things as:

1. The egregiousness of the violation;
2. The environmental consequences of the violation;
3. The length of time the violation persisted;
4. What efforts, if any were made to mitigate any environmental damage.

■ In its determination of whether the violation was willful or grossly negligent as opposed to inadvertent or a matter of simple negligence the Court may consider such things as:

1. The state of mind of the defendants;

2. Whether or not the acts were intentional or grossly negligent rather than really inadvertent or a matter of simple negligence;
3. Whether or not the defendants knew they were violating the TRPA ordinances at the time they did the acts in question; should defendants have known they were violating the ordinances at the time of the acts; and did defendants go ahead and build the road knowing that such was in violation of the ordinances;
4. Did the defendants believe they could build this road without a permit from TRPA?

■ The Court must give special consideration to the following factors as a matter of applying the general rules which govern imposition of civil fines and penalties:

1. The good or bad faith of the defendants;
2. Injury to the public;
3. Defendants' ability to pay;
4. The necessity of vindicating the authority of the responsible agency;
5. The desire to eliminate the benefit derived from the violation.

The above factors as to penalties are ones which are commonly applied in determining civil penalties or fines. *F.E.C. v. Furgatch*, 869 F.2d 1256 (9th Cir.1989).

There are also additional factors which the Court should consider in determining the amount of any fine which may be imposed:

1. Did the defendants attempt to profit from the construction?
2. Have the defendants demonstrated remorse for their acts?
3. Have the defendants tried to make amends to reasonably restore the property to the condition existing prior to construction of the roadway or to a condition where its state would not endanger the environment in the basin?
4. Deterrence of defendants from further violations of the ordinance; deterrence of others who may consider violating TRPA ordinances.
5. Defendants' financial condition.

6. Any pecuniary loss inflicted on others as a result of the acts.

7. Whether restoration of the land is ordered or other requirements of restitution are imposed.

It must be inferred from the inclusion of a provision for fines in the Compact that the basic purpose for including fines was to enable TRPA to enforce the compact, to punish violators and to deter violations of the Compact. Thus, most of the usual factors which courts consider in imposing fines come into play in determining whether a fine should be imposed in this case and if so, what the amount ought to be.

■ The evidence shows that defendants had been dealing with TRPA off and on for approximately seven years. On two occasions they sought to obtain a building permit for the five-acre parcel which the roadway was designed to access. They had been in frequent contact with both TRPA and Washoe County at various times.

Defendants had ample notice that construction of such a roadway was forbidden by the ordinances of TRPA and Washoe County, without the prior approval of both said governmental agencies. In fact, Metrailer was warned by officials of both TRPA and the County that he could not proceed without proper permits. He clearly knew that such approval was required when he caused the roadway to be built.

Prior to the court proceeding, a show cause hearing with respect to the violation was held before the TRPA governing board. At that hearing Metrailer stated that he had built the roadway out of frustration and that he was exercising his constitutional rights as a property owner.

The Court concludes that the defendants' acts were probably willful and in no event less than grossly negligent. The environmental consequences, although not disastrous, were serious within the immediate area of construction and, in view of a nearby stream, could have affected the Lake itself. While it is not the worst violation that could have occurred, such as dumping sewage in the Lake or dredging in the Lake, the violation was very substantial and egregious.

The violations persisted from August 27, 1987, to at least October 2, 1987, when defendants reseeded the area. The violations probably persisted until the reseeding took effect, and to some substantial extent, the violations continue to persist even today since the land is not completely restored and the trees will likely never be replaced. The scar on this land in the beautiful forest area remains.

After the violation was discovered defendants made fairly prompt efforts to protect the environment of the area. The work on the construction of the roadway was red-tagged and stopped by TRPA and Washoe County on approximately August 28, 1987. It is questionable whether work to restore the damaged area could have started before September 29, 1987. On that date TRPA forwarded a letter to defendants stating that restoration work could go forward and would not be prohibited by TRPA ordinances. Terrace had reason to wait until that time to begin the work of restoration.

On October 2, 1987, only three days later, defendants commenced efforts to restore the land but the violation continued for months after that until the grass began to grow and stabilize the area and, to some extent, continues even today.

Defendants contended at the trial that they constructed the roadway to prove to TRPA that they had legal access to the five-acre parcel. However, construction of the roadway was not necessary for that purpose; simply providing a copy of their deed of easement would have provided the necessary proof.

Defendants also contended that the roadway was needed to provide access for others entitled to lawfully pass through the area. This is questionable because a number of other persons had been able to walk through the approximate area of the easement without undue difficulty and, in any event, a narrow path would have sufficed for passage of such persons walking in the vicinity.

Defendants wanted to build a residence on their five acre parcel and they stood to

profit if a roadway for access could be built.

Although defendants tried to restore the property after ordered to do so by the TRPA governing board, it is questionable that even now they believe or understand that they have done anything wrong or that they have any remorse for their acts, except for the possible penalties they may suffer. Although the Court understands that people are sometimes frustrated with governmental regulations, that does not mean they can take the law into their own hands.

Defendants claim to be impecunious and unable to pay a reasonable and appropriate civil penalty, but the Court concludes otherwise. For example, the five-acre parcel in question owned by defendants is apparently not encumbered by any deed of trust or mortgage. It provides an asset to defendants which could be sold or used as collateral for a loan to pay a civil penalty.

TRPA has suffered expenses in the work its personnel have had to undertake to rectify the violation and enforce the ordinances. The additional restoration of the land which the Court will order is also a factor in fixing the amount of the civil penalty.

The other factors analyzed above which apply in determining whether civil penalties should be imposed and, if so, the appropriate amount will now be applied to the facts of this case.

The Court finds that the defendants acted in bad faith. The injury to the public is obvious since damage has occurred to the environment in the Lake Tahoe Basin. It must also be noted that deterrence of future violations by defendants and others is important, as is vindication of TRPA's authority. People must know that TRPA has authority to enforce its ordinances.

The Court hereby concludes that defendants violated the said ordinances of TRPA, that the violations were probably willful and were at least grossly negligent, and that the violations were substantial. The Court further concludes that civil penalties pursuant to Article VI(1) of the Compact should be imposed on defendants.

The staff of TRPA has established a schedule for imposing voluntary fines for violations of TRPA ordinances. The imposition of voluntary fines by the governing board of TRPA is essentially an offer of settlement in lieu of proceedings in court for imposition of civil penalties.

The Court is obviously not bound by the TRPA schedule but such schedule is worthy of consideration. The Court realizes that if it follows the schedule some persons may feel they have little to lose by not voluntarily paying a fine imposed by TRPA and by testing the waters in court. Citizens are certainly entitled to their day in court if they do not wish to settle the matter of a fine with the governing board of TRPA.

In this case, however, the amount of the fine suggested to the TRPA governing board by its staff appears to be fair and appropriate. The Court therefore finds that defendants shall be fined as follows: $5,000 for violation of Section 71.2, unauthorized removal of at least ten trees; $5,000 for violation of Sections 64.1 and 4.10, unauthorized grading; and $5,000 for allowing the violation to persist for at least one day and more likely for a matter of days and months in violation of Article VI(1) of the Compact.

The Court also finds that the plaintiff TRPA has not waived the right to its claim for a penalty based on persistence of the violation. Defendants have argued that TRPA is estopped to seek such a penalty because TRPA did not seek a restraining order immediately after the violations occurred. TRPA had no obligation to seek a restraining order. It proceeded properly in accordance with the applicable ordinances and civil laws.

It should be noted that a much larger fine could have been ordered by the Court based upon the record in this case, particularly because the persistence of the violation probably continued over a period of months and because such violations may even still persist today. *U.S. v. Key West Towers, Inc.*, 720 F.Supp. 963, 964 (S.D.Fla. 1989); *U.S. v. Ciampitti*, 669 F.Supp. 684,

700 (D.N.J.1987); *U.S. v. Cumberland Farms;* 647 F.Supp. 1166, 1183 (D.Mass. 1986).

Article VI(1) of the Compact sets limitations on civil penalties which may be imposed for violations of the Compact. Penalties of up to $5,000 may be enforced for each violation. The term violation must be taken to refer to a violation of a section of the Compact or ordinances, rather than to the occurrence of a particular event. *Miller v. U.S.*, 550 F.2d 17, 23, 24, fn. 4, 213 Ct.Cl. 59 (1979). A single event may result in several violations and the imposition of penalties is based on the number of violations rather than the number of events.

The Court now turns to the question of injunction. It is clear that defendants should be permanently enjoined from any further violation of the Compact or ordinances with respect to the subject real property over which the roadway was built. Clearly, defendants have no legal right to violate the ordinances and yet they may well be tempted to try again. TRPA has the right and duty to prevent such violations. Public interest in avoiding irreparable harm to the environment of the basin dictates that such an injunction be entered as the balance of the hardships tips strongly in favor of TRPA.

Whether the Court should require the property to be restored to its natural condition or whether a lesser restoration will be more adequate is a more difficult question.

Since the purpose of the Compact and ordinances is to preserve the fragile environment of Lake Tahoe, injunctions in furtherance of that goal are certainly justified.

Defendants presented testimony from a qualified soil scientist that the work done to date is probably adequate to protect against further damage to the environment. Yet, the Court questions whether a sufficient period of time has elapsed to adequately determine whether the restoration which has been done is sufficient to protect the environment, given that the past two or three years have been a period of severe drought.

A representative of the U.S. Forest Service (USFS) has visited the site and prepared an estimate of the additional work needed for full stabilization and erosion control. This additional work would not restore the property to its former natural state but it would meet the goal of the Compact and ordinances to preserve Lake Tahoe's fragile environment. This estimate is in the amount of $2,595 as of April 1990. Since the work will not be done until 1991, the Court will increase the amount of the estimate by five percent to conservatively account for inflation. The Court finds that the Forest Service estimate is realistic and sensible and will protect the environment. Therefore, defendants will be required to pay an additional civil penalty in the amount of $2,725.

The Court retains jurisdiction to issue any additional orders which may be required to complete the work. TRPA will make the necessary arrangements with the USFS or others to accomplish restoration according to the Forest Service estimate. The Court retains jurisdiction to reconsider the entire matter of restoration and the monetary penalty in the event there are problems in completing the work. Defendants indicate that they have no objection to the work of restoration being done by TRPA through the United States Forest Service or others and that they will not interfere with or oppose the work.

Finally, the Court finds that the acts of Mr. Metrailer were on his own behalf as well as on behalf of Terrace Land Company, a corporation owned and controlled by his family. The civil penalty shall be paid jointly and severally by defendants.

No showing has been made that there is authority for an award of attorney's fees to plaintiff so an award of attorney's fees must therefore be denied, but taxable costs may be the subject of a cost bill in accordance with the local rules.

THEREFORE, JUDGMENT SHALL BE ENTERED AS FOLLOWS: in favor of plaintiff and against defendants and each of them, jointly and severally for a civil penalty in the amount of $17,725.00, payable forthwith. Defendants are permanently enjoined from performing any con-

struction on the subject real property over which the roadway was built, including but not limited to construction of any road or driveway, dirt removal, grading or development of any kind, until TRPA has issued all applicable permits.