UNITED STATES of America, Plaintiff–Appellee,

v.

**LAERDAL MANUFACTURING CORP.; and John L. Karpowicz, Defendants–Appellants.**

No. 94–35780.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 16, 1995.

Memorandum Filed Oct. 25, 1995.

Memorandum Amended Oct. 31, 1995.

Order and Opinion Filed Dec. 28, 1995.

James F. Dulcich, Jeffrey D. Austin, and James N. Westwood, Miller, Nash, Wiener, Hager & Carlsen, Portland, Oregon; Daniel G. Jarcho and Daniel E. Johnson, McKenna, Conner & Cuneo, Washington, D.C., for defendants-appellants.

Craig J. Casey, Assistant United States Attorney, Portland, Oregon; Elizabeth Stein, United States Department of Justice, Washington, D.C., for plaintiff-appellee.

Before: WALLACE, Chief Judge, and D.W. NELSON and BRUNETTI, Circuit Judges.

### ORDER

The Amended Memorandum disposition, filed October 31, 1995, is redesignated as an authored opinion by Judge D.W. Nelson, Circuit Judge.

### OPINION

D.W. NELSON, Circuit Judge:

Appellant Laerdal Manufacturing Corp. appeals the order of the district court that Laerdal be "perpetually restrained and enjoined from directly or indirectly ... (f)ailing or refusing to furnish information required by or under 21 U.S.C. § 360i, in accordance with" Medical Device Reporting ("MDR") regulations, 21 C.F.R. § 803. *United States v. Laerdal Manufacturing Corp.*, 853 F.Supp. 1219 (D.Or.1994). Laerdal is a manufacturer of automated external defibrillators ("AEDs"), which are applied to cardiac arrest victims in order to convert ventricular fibrillation back into regular heartbeats. In its findings of fact, the court determined that Laerdal had violated 21 C.F.R. § 803.1(a) which requires a manufacturer to file a report with the Food and Drug Administration ("FDA") "whenever information is received that reasonably suggests that a patient care device ... may have caused or contributed to a death or serious injury." *Id.* at 1237.

Laerdal argues that the court improperly imposed this injunction, because there was no cognizable danger that Laerdal would violate the MDR regulation in the future. Laerdal claims that (a) the violation found by the court was an isolated incident, (b) the violation was unintentional, and (c) Laerdal has taken the necessary steps to prevent future violations. In addition, Laerdal contends that the balance of the parties' interests dictates that no injunction is warranted. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

### STANDARD OF REVIEW

We review the scope of injunctive relief for an abuse of discretion or application of erroneous legal principles. *Dexter v. Kirschner*, 984 F.2d 979, 982 (9th Cir.1992). "The district court abuses its discretion if its conclusion is based on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions." *Multnomah Legal Serv. Workers Union v. Legal Servs. Corp.*, 936 F.2d 1547, 1552 (9th Cir.1991). "A strong showing of abuse must be made to reverse" a court's decision to grant an injunction. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).

### THE PERMANENT INJUNCTION AND THE "COGNIZABLE DANGER OF RECURRENT VIOLATION"

A district court cannot issue an injunction unless "there exists some cognizable danger of recurrent violation." *Id.* The determination that such danger exists must "be based on appropriate findings supported by the record." *Federal Election Comm'n v. Furgatch*, 869 F.2d 1256, 1263 (9th Cir.1989); Fed.R.Civ.P. 65(d). Factors that a district

court may consider in making this finding include

the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the extent to which the defendant's professional and personal characteristics might enable or tempt him to commit future violations; and the sincerity of any assurances against future violations. [*Furgatch*, 869 F.2d at 1263, n. 5 (citations omitted).]

Laerdal claims that the court's opinion contains no findings supporting a cognizable danger of recurrent violations and that the order granting the injunction must be reversed. We find, to the contrary, that the district court did make findings that indicated a cognizable danger of recurrent violations.

### THE NUMBER OF VIOLATIONS

■ Laerdal asserts that the court found only one isolated violation of the MDR regulation. This assertion does not accurately represent the whole of the court's findings. The district court specifically found that "at least one violation of the MDR regulations has occurred." *Laerdal*, 853 F.Supp. at 1237. The court developed at length the facts surrounding the incident in Grand Rapids that first brought Laerdal's reporting practices to the FDA's attention, but the court also found testimony in the record that Laerdal had received complaints of other instances in which a Laerdal AED failed to work properly. *Id.* at 1235–7.

On the basis of these findings the court concluded that while Laerdal's official reporting policy incorporated the language of FDA regulations, in actual practice Laerdal had an ongoing history of not implementing these procedures. Accordingly, in the "Conclusion" of the findings, the court did not state merely that Laerdal had committed a single violation; rather, the court concluded that while Laerdal's quality assurance program is consistent with the regulations, in practice Laerdal "has failed to comply with the MDR regulations." *Id.* at 1239.

■ Even if the district court had found evidence of only one violation, Laerdal is in error in asserting that one violation provides insufficient grounds for granting an injunction. The Supreme Court has determined that if a court has found a cognizable danger of recurrent future violations, an injunction "can be utilized even without a showing of past wrongs." *W.T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897. Likewise, we have determined that a statutory injunction may be imposed when a violation of a statute has been or is about to be committed. *Burlington Northern Railroad Co. v. Dept. of Revenue of the State of Washington*, 934 F.2d 1064, 1074–5 (9th Cir.1991).

### INTENTION AND THE LIKELIHOOD OF RECURRENCE

■ Laerdal further argues that it did not intend to violate the MDR regulations, and thus, no degree of scienter was involved. In this context, Laerdal also argues that the district court made a clearly erroneous factual finding in its determination that Laerdal had received information reasonably suggesting that in the Grand Rapids incident a Laerdal AED may have caused or contributed to a death. As Laerdal concedes, 21 C.F.R. § 803 is a strict liability provision. For purposes of determining whether Laerdal violated the MDR regulations, the district court was not required to develop the issue of Laerdal's intent; however, Laerdal contends that its intent is pertinent to the likelihood of its committing future violations.

Laerdal has repeatedly argued that its actions in violating the MDR regulations were justifiable. Though Laerdal decided to file a report concerning the Grand Rapids incident two weeks before trial, the court noted that Laerdal continued to argue at trial that the circumstances of the incident did not make filing a report necessary. Moreover, the court found that Laerdal's decision to file a report did not reflect a concession that it had violated the law; the court specifically cited the testimony of Laerdal's Director of Quality Assurance, Kenneth Herland, who stated that they decided to submit a report only to be "cooperative," though his understanding from the facts was that they should not have

submitted a report. *Laerdal*, 853 F.Supp. at 1236–7.

Though Laerdal does not appeal the court's finding that it violated the MDR regulations, Laerdal nonetheless continues to argue that its actions were justifiable. Laerdal cites as support for its failure to file a report "the ambiguous language of the regulation" and numerous unique aspects of the Grand Rapids incident that warranted its decision not to file a report. At worst, Laerdal concludes, its inaction was "a good-faith error," not "an intentional violation." In response to the government's allegation that Laerdal's self-justification manifests "a company attitude condoning circumvention of the law," Laerdal reiterates its argument as to the "unique circumstances" of the Grand Rapids incident that justified its decision not to file.

Laerdal's intransigent insistence on its own blamelessness also manifests itself in hostility toward the MDR system. At trial and on appeal, Laerdal has attempted to demonstrate the "foibles of the MDR system." It claims that "MDR reports languish for several months in a bureaucratic limbo" and that the consequences of its Grand Rapids violation were "merely trifling." Laerdal also finds fault with the fact that the FDA is so "backlogged" and plagued by "administrative delays" that "it can take several months" before a report is filed.

▬ Laerdal's repeated self-justification is sufficient to show a likelihood of future violation. Even if Laerdal had not intended to violate the regulation, its continued insistence on justifying its actions in committing the violation "is an important factor in deciding whether future violations are sufficiently likely to warrant an injunction." *Furgatch*, 869 F.2d at 1262 (citations omitted). We have found that the fact that a person "violated the regulations once when he did not intend to do so is sufficient to justify the conclusion that he might do so again, even if the court believed he was sincere in his protestations to the contrary." *S.E.C. v. Murphy*, 626 F.2d 633, 656 (9th Cir.1980). That Laerdal's self-justification extends to indicting the MDR system itself reflects "the sort of extraordinary intransigence and hostility" toward the FDA and the MDR regulations

that support the inference of a likelihood to commit future violations. *Furgatch*, 869 F.2d at 1262.

▬ Contrary to Laerdal's assertion, the court did not err in finding that in the Grand Rapids incident, Laerdal had received information reasonably suggesting that one of its AEDs may have contributed to a death. As the district found and Laerdal itself notes, on June 16, 1993, Grand Rapids, Michigan Fire Department personnel applied a Laerdal AED to a man in cardiac arrest. The Laerdal AED did not apply any shock to the man's heart, and the man died after the Laerdal AED was disconnected and an ambulance crew applied its own defibrillator. Laerdal's own clinical investigator, using the AED's internal recording tapes, determined that the AED ought to have applied a shock and recommended further investigation. *Laerdal*, 853 F.Supp. at 1233–6. Contrary to Laerdal's assertion, the requirement to file a report with the FDA does not rest on whether Laerdal had received an "allegation" that the death was related to the AED. Likewise, the opinion of Grand Rapids firemen, received five months later, that the device did not have enough time to apply a shock does not negate the contemporaneous, test-based findings of Laerdal's own technician that the AED ought to have applied a shock.

### REFORM AND THE LIKELIHOOD OF RECURRENCE

Laerdal argues that it had "at the time of trial already taken the steps necessary to prevent future violations," and that the district court had "concluded that it 'is satisfied that Laerdal Manufacturing will comply with ... the MDR regulations.'" *See Laerdal*, 853 F.Supp. at 1238. Thus, Laerdal concludes, the district court's own findings show there to be no cognizable danger of recurring violations.

Laerdal fails to note the context in which the district court expressed its satisfaction with Laerdal's future compliance. This quote is taken from the concluding paragraph of a section concerning evidence pertaining to two separate injunctions requested by the government: (1) a preliminary injunc-

tion ordering Laerdal to cease all manufacturing, and (2) a statutory injunction enjoining further violation of the MDR regulations. *Id.* at 1235–8.

In context, the statement as to the court's satisfaction pertained to the first injunction. The court was satisfied that the preponderance of the evidence did not establish that Laerdal would violate the MDR regulations absent an order to cease operations. *Id.* at 1237–8. However, the court also found that Laerdal's ongoing history of not following its own stated reporting procedures made necessary not only the statutory injunction, but regular government inspections specifically aimed at determining whether Laerdal is actually following its new stated procedures. *Id.* at 1238. The court was not in error in questioning Laerdal's credibility with respect to reforms introduced under protest or after the violation was discovered; moreover, past illegal conduct gives rise to an inference that future violations may occur. *S.E.C. v. Koracorp Industries Inc.*, 575 F.2d 692, 698 (9th Cir.1978), *cert. denied*, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

### BALANCING THE INTERESTS OF THE PARTIES

Laerdal asserts that the district court failed to balance the interests of the parties. Furthermore, Laerdal contends that its own interests—the reputational damage caused by the injunction and the losses due to sanctions imposed when Laerdal next violates the regulation—outweigh the public interest served by the regulation. The record shows otherwise. In the first paragraph of the "Conclusion" of the findings, the court implicitly balances the public health against the burden placed upon Laerdal, namely, that it comply with government regulations. *Laerdal*, 853 F.Supp. at 1239. The court's ruling in favor of the public interest is consistent with the legal standards governing the exercise of equitable discretion. *Miller v. California Pacific Medical Center*, 19 F.3d 449, 460 (9th Cir.1994); *Federal Trade Comm. v. World Wide Factors, Ltd.*, 882 F.2d 344 (9th Cir.1989).

Laerdal argues that the public interest was not harmed, because FDA allegedly suffers from a backlog in filing its reports and the Grand Rapids report would have languished for several months before being filed. However, the public interest addressed by the MDR regulations centers not on the efficiency of the FDA, but on the attention manufacturers pay to evidence that their products could be causing or contributing to needless deaths. That Laerdal regards its own reputational and financial interests to be more important only reinforces the need for the injunction.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.