

IN THE
TENTH COURT OF APPEALS

No. 10-07-00399-CV

KEVIN GLENN SCHRONK, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF HELEN PATRICIA
SCHRONK, DECEASED, AND DUSTIN SCHRONK

Appellants

v.

CITY OF BURLESON AND LAERDAL MEDICAL CORP.,

Appellees

From the 413th District Court
Johnson County, Texas
Trial Court No. C200600118

OPINION

Kevin Schronk and his son Dustin filed a wrongful death suit against the City of
Burleson and Laerdal Medical Corporation after emergency medical technicians
employed by the City were unable to resuscitate Helen Schronk with an automatic
external defibrillator (AED) manufactured by Laerdal. The trial court granted the City's
plea to the jurisdiction and Laerdal's summary-judgment motion. The Schronks

contend in four points that the court erred by: (1) granting Laerdal's summary-judgment motion because the motion did not address their product liability claim and genuine issues of material fact remain on their negligence claim; (2) denying their special exceptions to the City's plea to the jurisdiction; (3) granting the City's plea to the jurisdiction; and (4) sustaining the City's objections to evidence they offered in opposition to the City's plea to the jurisdiction. We will reverse and remand.

## Background

Kevin Schronk called 9-1-1 when his wife Helen suffered a cardiac arrest. EMT's employed by the City responded and tried to resuscitate Helen with an AED manufactured by Laerdal. However, the AED's battery was too weak to administer a defibrillating shock. The EMT's made several attempts to administer a shock with the AED but could not because of the low battery. Another AED was brought to the location, but Helen could not be resuscitated. She was pronounced dead on arrival at the hospital.

Kevin and Dustin filed suit against the City and Laerdal. They alleged that the City was liable for negligence based on its failure to properly maintain the AED and for violations of various statutes applicable to emergency services providers. They alleged that Laerdal was liable: (1) for negligence in the: (a) design, manufacture, marketing, etc. of the AED; (b) training of City employees in the operation and maintenance of the AED; (c) service and maintenance of the AED; and (d) labeling of the AED battery; and (2) for selling an unreasonably dangerous product.

The City filed a plea to the jurisdiction alleging that its "sovereign immunity has not been waived."  Laerdal filed a summary-judgment motion presenting both no-evidence and traditional grounds.  The Schronks filed pleadings responsive to the plea to the jurisdiction and to the summary-judgment motion.  They also filed a summary-judgment motion of their own.

The City filed objections to evidence relied on by the Schronks in their response to the plea to the jurisdiction.  Laerdal likewise filed objections to evidence relied on by the Schronks in their summary-judgment response.

The court conducted a hearing on the City's plea to the jurisdiction, Laerdal's summary-judgment motion, and the Schronks' summary-judgment motion.  A week later, the court signed three separate orders: (1) granting the City's plea to the jurisdiction; (2) granting Laerdal's summary-judgment motion; and (3) sustaining the City's objections to the Schronks' evidence.

## Special Exceptions

The Schronks contend in their second point that the court abused its discretion by denying their special exceptions to the City's plea to the jurisdiction.  The City responds that the Schronks have failed to preserve this issue for appellate review because they did not obtain a ruling on their special exceptions.  In the alternative, the City argues that no abuse of discretion is shown because the plea to the jurisdiction gave the Schronks fair notice of the basis for the City's immunity claim.

*Preservation*

The trial court did not expressly rule on the special exceptions. When the Schronks called their special exceptions to the court's attention at the hearing on the plea to the jurisdiction, the court responded, "I don't have a hearing on Special Exceptions set. I just want to hear the Plea to the Jurisdiction and the responses to that." But the order granting the City's plea to the jurisdiction reads in pertinent part:

> came on to be considered the City of Burleson's Plea to the Jurisdiction, together with its Brief Supporting City of Burleson's Plea to the Jurisdiction (including an Appendix); *Plaintiff's Special Exceptions* and Response to City of Burleson's Plea to the Jurisdiction and to Brief Supporting City's Plea; Plaintiffs' Supplemental Response to Defendant Burleson's Plea to the Jurisdiction; and City of Burleson's Objections to Plaintiffs' Response; and arguments of counsel. *Having considered such matters*, the Court has determined that the Plea to the Jurisdiction is well founded and should be granted.

(emphases added).

Rule of Appellate Procedure 33.1 recognizes that issues may be preserved either by express or implicit rulings. *See* TEX. R. APP. P. 33.1(a)(2)(A). In the summary-judgment context, this Court has consistently held that the grant of a summary-judgment motion, standing alone, does not constitute an implicit ruling on objections to the movant's summary-judgment proof. *See, e.g., Allen ex rel. B.A. v. Albin*, 97 S.W.3d 655, 663 (Tex. App.—Waco 2002, no pet.). The Schronks contend that a different rule applies for special exceptions. *See, e.g., Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 824 n.3 (Tex. App.—Fort Worth 2008, no pet.) ("a trial court implicitly overrules special exceptions when it grants summary

judgment on the motion to which the special exceptions pertain"). However, we need not decide in this case whether a different rule applies.

The Schronks called their special exceptions to the trial court's attention at the hearing on the plea to the jurisdiction. The court stated on the record that it did not want to consider the special exceptions, but stated in its written order that it did consider them. *See In re Marriage of Jordan*, 264 S.W.3d 850, 855 (Tex. App.—Waco 2008, no pet.) (written order controls over oral rulings). Thus, the court considered the Schronks' challenges to the adequacy of the City's plea to the jurisdiction and implicitly overruled their challenges by ruling on the merits of the City's pleading. *See Clement v. City of Plano*, 26 S.W.3d 544, 550 n.5 (Tex. App.—Dallas 2000, no pet.) (by granting summary judgment, trial court implicitly overruled special exceptions which were "presented" to court), *disapproved on other grounds by Telthorster v. Tennell*, 92 S.W.3d 457, 464 (Tex. 2002).

*Type(s) of Immunity Alleged*

"The purpose of a special exception is to compel clarification of pleadings when the pleadings are not clear or sufficiently specific." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam). Pleadings must give "fair notice" of a party's claims or defenses. *Horizon/CMS Heathcare Corp. v. Auld*, 34 S.W.3d 887, 896-97 (Tex. 2000); *Schwartz v. Ins. Co. of the State of Pa.*, 274 S.W.3d 270, 276 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). The test long-recognized by intermediate appellate courts[1] in Texas is "whether an opposing attorney of reasonable competence, perusing the

---

[1]     According to our research, the Supreme Court has neither embraced nor rejected this test.

pleadings, can ascertain the nature and the basic issues of the controversy and the testimony probably relevant." 2 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 7:4[b] (2d ed. 2002); *see Schwartz*, 274 S.W.3d at 276; *Schley v. Structural Metals, Inc.*, 595 S.W.2d 572, 587 (Tex. Civ. App.—Waco 1979, writ ref'd n.r.e.); *Daniels v. Conrad*, 331 S.W.2d 411, 415 (Tex. Civ. App.—Dallas 1959, writ ref'd n.r.e.).

The Schronks first argue that the City's plea to the jurisdiction does not give fair notice of whether the City was asserting immunity from suit or immunity from liability. It is true that the City's pleading only uses the term "sovereign immunity" and does not specify whether immunity from suit or immunity from liability is claimed.

The Schronks cite *Baylor College of Medicine v. Hernandez*, 208 S.W.3d 4 (Tex. App.—Houston [14th Dist.] 2006, pet. denied), for the proposition that, because the City explicitly claimed immunity as an affirmative defense and never used the term "immunity from suit" in its pleading, the City's plea to the jurisdiction does not allege immunity from suit. In *Baylor College of Medicine*, however, the plaintiff did not challenge the defendants' pleadings by special exceptions, and the defendants/appellants did not claim immunity from suit in their appellate pleadings. *See id.* at 9 n.5. Thus, the court made it clear that immunity from suit was not an issue in that case.

> As the text of appellants' motions and briefs make clear, Baylor and the Physicians interpret section 312.006 of the Health and Safety Code to confer immunity from liability on each of them and base their claims of immunity on this section and on the alleged lack of notice. Although appellants' motion to dismiss also contains the conclusory statement that Baylor and the Physicians are immune from both liability and suit pursuant to "TEX. HEALTH & SAFETY CODE Section 312 *et seq.*, TEX. CIV.

PRAC. & REM.CODE Section 101 *et seq.*, and TEX. EDUC. CODE Section 61 *et seq.*," the appellants repeatedly state that section 312.006(a) confers immunity from liability and present neither argument nor authority supporting their claim that any specific section of the globally-cited codes renders them immune from suit. To the extent that such an issue has been raised, it is waived pursuant to TEX. R. APP. P. 33.1(a)(1)(A) and 38.1(h).

*Id.*

Here, the City unequivocally claims immunity from suit on appeal, so we will examine the City's trial pleadings to determine whether immunity from suit was adequately pleaded in the court below.

Sovereign or governmental immunity[2] consists of immunity from suit and immunity from liability. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Immunity from suit "bars a suit unless the state has consented," while immunity from liability "protects the state [or a political subdivision] from judgments even if it has consented to the suit." *Id.* "[I]mmunity from suit deprives a trial court of subject-matter jurisdiction." *Id.* By contrast, immunity from liability is an affirmative defense which must be pleaded or it is waived. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999); *City of Weslaco v. Borne*, 210 S.W.3d 782, 789-90 (Tex. App.—Corpus Christi 2006, pet. denied). "Immunity from liability does not affect a court's jurisdiction to hear a case." *Jones*, 8 S.W.3d at 638; *accord Borne*, 210 S.W.3d at 789.

First, we observe that the City filed a three-part defensive pleading. In the first part, the City generally denied the Schronks' allegations. In the second, the City

---

[2] "Sovereign immunity protects the State, state agencies, and their officers, while governmental immunity protects subdivisions of the State, including municipalities and school districts." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008).

asserted the "affirmative defense" of "sovereign immunity." *See Jones*, 8 S.W.3d at 638; *Borne*, 210 S.W.3d at 789-90. The City entitled the third part a "plea to the jurisdiction."[3] Paragraph 3.02 states, "Because the City's sovereign immunity has not been waived, Plaintiff's claims are barred. Therefore, this Court does not have jurisdiction as to the City." From this allegation, "an opposing attorney of reasonable competence" would understand that the City was claiming immunity from suit in the "plea-to-the-jurisdiction" section of its defensive pleading. *See Reata Constr. Corp.*, 197 S.W.3d at 374.

*Supporting Brief*

The Schronks also challenge the propriety of the City's brief supporting its plea to the jurisdiction "to the extent [the supporting brief] attempts to cure the defects or add grounds, argument or evidence omitted from the Plea." Restated, they contend that a brief in support of a plea to the jurisdiction cannot: (1) cure defects in the plea to the jurisdiction; (2) allege additional grounds on which a court may determine that it does not have jurisdiction; (3) present additional argument regarding the grounds stated in the plea to the jurisdiction; or (4) present evidence supporting the grounds stated in the plea to the jurisdiction.

We need not address the first two contentions because the City's plea to the jurisdiction is not "defective" and because the brief in support of the City's plea does

---

[3] The Schronks also complain about the City's incorporating by reference in this third part of its defensive pleading "the reasons set forth in the foregoing paragraphs numbers 2.01, 2.02, 20.3 [sic], 2.04 and 2.05" (which are paragraphs in the "immunity-from-liability" section of the pleading) as grounds for its claim of immunity from suit. We are unpersuaded. This pleading method merely reflects the close relationship in the Tort Claims Act between immunity from suit and immunity from liability. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a) (Vernon 2005) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) ("The Tort Claims Act creates a unique statutory scheme in which the two immunities are co-extensive").

not present additional grounds on which the Court could find that the City's immunity from suit is not waived.

In *Burford v. Wilson*, the Tyler Court held that, under Rule of Civil Procedure 166a(c),[4] exhibits attached to the appellees' brief filed in support of their summary-judgment motion but not referred to in the motion could not be considered as part of the summary-judgment record. 885 S.W.2d 253, 256 (Tex. App.—Tyler 1994), *rev'd on other grounds*, 904 S.W.2d 628 (Tex. 1995) (per curiam). The Supreme Court reversed because a deposition attached to the appellees' supporting brief was also referred to in the appellants' summary-judgment response. *Wilson v. Burford*, 904 S.W.2d 628, 629 (Tex. 1995) (per curiam). The *Burford* case serves to illustrate the unique provisions of Rule of Civil Procedure 166a governing summary-judgment practice. Admittedly, the Supreme Court has looked to summary-judgment cases for guidance in defining the *standard of review* for a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227-28 (Tex. 2004). But the Court has expressly rejected the

---

[4]    Rule 166a(c) provides in pertinent part that a summary-judgment ruling must be based on:

(i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court.

TEX. R. CIV. P. 166a(c). Under the plain language of this rule (and contrary to the Tyler Court's decision in *Burford*), documentary evidence may be considered as part of the summary-judgment record if it is "on file at the time of the hearing, or filed thereafter and before judgment with permission of the court." *Enter. Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004) (per curiam) (quoting TEX. R. CIV. P. 166a(c)). Of course, it is preferable that a summary-judgment motion or response make specific reference to other evidence on file but not attached to the motion or response.

application of the summary-judgment *procedures* required by Rule 166a in the context of a plea to the jurisdiction. *Id.* at 228-29.

The Tyler Court observed in *Burford* that "[t]he sole purpose of a brief in support of a motion for summary judgment is to aid the court in determining whether the summary judgment grounds and evidence in support of those grounds entitles the movant to judgment as a matter of law."  885 S.W.2d at 256.  Thus, a brief filed in support of a particular trial pleading should ordinarily clarify the grounds asserted in that pleading and present additional argument and authorities in support of those grounds.

The City's supporting brief is divided into eight parts: (1) authority to submit brief and appendix; (2) general discussion of the law regarding sovereign immunity; (3) summary of the Schronks' claims; (4) argument and authority regarding why the City's immunity is not waived under the Tort Claims Act; (5) argument and authority regarding why the City's immunity is not waived under the Health and Safety Code; (6) argument and authority regarding why the City's immunity has not been waived with regard to the Schronks' bystander claims; (7) an alternative argument with supporting authority that there is no evidence the AED caused a legally cognizable loss of chance of survival; and (8) a summary and conclusion.

In the concluding summary, the supporting brief states:

> The City's March 20, 2006 Plea to the Jurisdiction asserted the City's sovereign immunity to all of Plaintiff's [sic] claims.  The City asserted that the injuries and death at issue are not caused by the City's property.  The City asserted that bystander claims are not the type of claim for which sovereign immunity is waived.  The City asserted that

Tort Claims Act § 101.055 does not waive immunity. For these reasons, and based upon the evidence and in the Appendix supporting this Brief, and based upon the legal arguments contained in this Brief, the City's Plea to the Jurisdiction must be granted and the claims against the City dismissed.

As clarified by this concluding summary, the City's supporting brief offers additional argument and authorities to support the contentions set forth in its plea to the jurisdiction, namely: (1) the City has immunity from suit because the AED did not cause Helen's death; (2) there is no waiver of immunity for the Schronks' bystander claims; and (3) the City has immunity from suit under sections 101.055 and 101.062 of the Tort Claims Act, which apply respectively to emergency services providers and 9-1-1 emergency services.[5] The supporting brief does not assert additional grounds for immunity from suit.

The supporting brief incorporates by reference an appendix containing authenticated copies of pertinent City records, depositions and exhibits, and affidavits. This is the evidence on which the City relies to prevail on its claim of immunity from suit. The Schronks argue that this is improper because the supporting evidence is not attached to the City's plea to the jurisdiction itself. We disagree. There is no rule specifying the manner in which a party must present evidence in support of a plea to the jurisdiction. Although summary-judgment practice may provide a useful analytical framework, there is no rule requiring that evidence be attached to a plea to the jurisdiction to be considered by a trial court. *Cf.* TEX. R. CIV. P. 166a(c) (summary

---

[5] The City's claim of immunity under section 101.062 of the Tort Claims Act relates to the Schronks' allegations that the City violated sections 773.042 and 779.003 of the Health and Safety Code.

judgment should be based in part on evidence "referenced or set forth in the motion or response").

The City filed its supporting brief and appendix more than a month before the hearing on the plea to the jurisdiction. The Schronks do not contend that they were surprised or prejudiced by the evidence included in the appendix and referenced in the supporting brief. Therefore, we hold that the court did not abuse its discretion by considering the evidence the City submitted in this manner.

*Nature of Jurisdictional Challenge*

Finally, the Schronks contend that the plea to the jurisdiction is deficient because it does not specify whether the City is challenging the adequacy of their petition or the existence of jurisdictional facts. *See Miranda*, 133 S.W.3d at 226-27 (describing two types of challenges which may be asserted in a plea to the jurisdiction).

The Schronks allege in their petition that the City's use of a defective AED was a proximate cause of Helen's death. The Schronks further allege that the "non-waiver" of immunity under section 101.055 for emergency services providers does not apply because the City acted "with conscious indifference or reckless disregard for the safety of others." And the Schronks allege that the "non-waiver" of immunity under section 101.062 for providers of 9-1-1 emergency services does not apply because the City violated statutes regarding the maintenance and testing of AED's.

The City contends in its plea to the jurisdiction that (1) it has immunity from suit under section 101.021 because the AED did not cause Helen's death; (2) there is no

waiver of immunity under section 101.021 for the Schronks' bystander claims; and (3) it has immunity from suit under sections 101.055 and 101.062.

A plea to the jurisdiction which challenges the plaintiff's pleadings asserts that the plaintiff's pleadings fail to allege "facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *See Miranda*, 133 S.W.3d at 226. Conversely, a plea to the jurisdiction which disputes the existence of jurisdictional facts asserts in essence that the evidence conclusively negates the existence of the relevant jurisdictional facts. *Id.* at 227-28.

The heart of the Schronks' claims is that the City's use of a defective AED was a proximate cause of Helen's death. The City does not contend in its plea to the jurisdiction that this allegation is not sufficient to allege a waiver of immunity under section 101.021 or the other applicable statutes. Rather, the City disputes whether its use of the AED was a proximate cause of Helen's death. Thus, "an opposing attorney of reasonable competence" would understand that the City's plea to the jurisdiction challenged the existence of jurisdictional facts. *Id.*

The court did not abuse its discretion by overruling the Schronks' special exceptions. Accordingly, we overrule the Schronks' second point.

## Objections to the Schronks' Evidence

The Schronks aver in their fourth point that the court abused its discretion by sustaining the City's objections to the evidence they offered in response to the City's plea to the jurisdiction.[6]

The Schronks do not contest the applicability of the Rules of Evidence to evidence submitted in connection with a plea to the jurisdiction. We are aware of no reason these rules should not govern the admissibility of such evidence. *See* TEX. R. EVID. 101(b) ("Except as otherwise provided by statute, these rules govern civil and criminal proceedings (including examining trials before magistrates) in all courts of Texas, except small claims courts."); *cf. Allbritton v. Gillespie, Rozen, Tanner & Watsky, P.C.*, 180 S.W.3d 889, 892 (Tex. App.—Dallas 2005, pet. denied) ("Summary-judgment evidence must be presented in a form that would be admissible in a conventional trial proceeding."); *Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.*, 127 S.W.3d 235, 240 (Tex. App.—Waco 2003, no pet.) (same).

### *Depositions Regarding Violation of Section 779.003 of the Health & Safety Code*

The City raised a three-part objection to deposition excerpts from various firefighters which the Schronks offered to establish that the AED was not maintained and tested in accordance with manufacturer guidelines and that the City thus violated

---

[6] Because the admissibility of the Schronks' evidence impacts our review of the merits of the City's plea to the jurisdiction, we first address their fourth point. *See Torres v. GSC Enters., Inc.*, 242 S.W.3d 553, 557 (Tex. App.—El Paso 2007, no pet.); *Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.*, 127 S.W.3d 235, 240 (Tex. App.—Waco 2003, no pet.).

section 779.003 of the Health and Safety Code.[7] The City objected that the Schronks omitted from these excerpts the objections the City lodged at the time of the depositions.[8] *But see* TEX. R. CIV. P. 203.6(b) ("All *or part* of a deposition may be used for any purpose in the same proceeding in which it was taken.") (emphasis added); *Jones v. Colley*, 820 S.W.2d 863, 866 (Tex. App.—Texarkana 1991, writ denied) ("[T]he defendants, on the sole ground that the tape was out of chronological order or was not complete, had no right to prevent the use of the edited videotape. Their remedy was to introduce the unedited deposition or their own edited version in response to Jones' offer.").

The City also objected that the testimony of these firefighters was conclusory regarding any failure to follow the manufacturer's guidelines because there is no evidence in the record of: (1) the factual content of the guidelines allegedly violated; (2) how the guidelines pertained to maintenance or testing; or (3) how the guidelines were violated. In addition, the City objected that this testimony was conclusory regarding any violation of section 779.003 because there is no evidence that the firefighters: (1) knew the content of this law; (2) knew how the law was violated; or (3) were qualified to give an opinion concerning the alleged violation.

---

[7] Section 779.003 provides, "A person or entity that owns or leases an automated external defibrillator shall maintain and test the automated external defibrillator according to the manufacturer's guidelines." TEX. HEALTH & SAFETY CODE ANN. § 779.003 (Vernon 2003).

[8] The City states that most of these objections were to the form of the questions posed. *See* TEX. R. CIV. P. 199.5(e). The City suggests that there were other objections but does not identify the nature of the objections.

We first observe that the City's objections appear to be directed to the excerpts of deposition testimony included within the body of the Schronks' response. However, the Schronks attached more complete excerpts of these depositions as exhibits. Regarding the manufacturer's guidelines, counsel handed the witnesses a copy of a 46-page document with "Directions for Use" for the AED and asked them questions about particular instructions without objection.[9] If the quoted excerpts are read standing alone, they are somewhat conclusory, but when read in conjunction with the remainder of each witness's testimony, they merely summarize that witness's previous testimony and are supported by a written copy of the manufacturer's guidelines attached as an exhibit to one of the depositions.[10]

Summary-judgment evidence is considered "conclusory" if it "does not provide the underlying facts to support the conclusion." *Choctaw Props.*, 127 S.W.3d at 242 (quoting *Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)) (other citations omitted). "A 'conclusory' statement may set forth an unsupported legal conclusion or an unsupported factual conclusion." *Id.* A lay witness "may not give legal conclusions or interpret the law to the jury." *United Way of San Antonio, Inc. v. Helping Hands Lifeline Found., Inc.*, 949 S.W.2d 707, 713 (Tex. App.—San Antonio 1997, writ denied).

---

[9] This 46-page document is entitled, "Laerdal HEARTSTART 911, Automated External Defibrillator, Directions for Use." We refer to it hereinafter as the "instruction manual."

[10] We have already ruled that the City's evidence did not need to be attached to its plea to the jurisdiction to be considered by the trial court. We likewise hold that the entirety of a responding party's evidence need not be quoted within the body of a response to the plea to the jurisdiction. Such evidence may be attached to the responsive pleading or filed separately and contemporaneously thereto or "thereafter and before judgment with permission of the court." *Cf.* TEX. R. CIV. P. 166a(c).

Taking as true the deposition testimony favorable to the Schronks,[11] Firefighter Steve Burchett testified that the manufacturer's guidelines "specifically" say "you're supposed to check the date codes on every battery before you use them." He did not know of anyone in the department who did this, which was in his opinion a violation of the guidelines. Lieutenant Michael Gloff testified that the batteries in the AED had expired and their use on the occasion in question was a violation of the guidelines.

In both instances, these witnesses provided an adequate factual basis for their testimony. Thus, the court abused its discretion to the extent that it sustained the City's objections on the basis that the testimony of these witnesses was conclusory regarding the City's alleged failure to follow the manufacturer's guidelines. *See Choctaw Props.*, 127 S.W.3d at 242-43.

However, both witnesses and others were also asked whether this conduct constituted a violation of section 779.003. This was improper. *See United Way of San Antonio*, 949 S.W.2d at 713. Thus, the court did not abuse its discretion insofar as it sustained the City's objections that these witnesses were improperly testifying regarding legal conclusions.

### *Dr. Reese's Affidavit*

The City objected to the affidavit of the Schronks' expert Dr. Edward Reese on the grounds that: (1) he relies on Laerdal records which cannot be used against the City; (2) his affidavit is supported by a "random collection" of documents which are not

---

[11] *See Miranda*, 133 S.W.3d at 228 (appellate court must "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor").

properly identified or authenticated; (3) his concluding statement of opinion does not adequately identify the bases for the opinion; and (4) he is not qualified to provide a medical opinion on the cause of Helen Schronk's death.

The City states no legal basis for its initial objection regarding Dr. Reese's use of Laerdal records. We are aware of no such limitation. The Schronks' theory is that City employees used a defective AED manufactured by Laerdal which was a proximate cause of Helen Schronk's death. Laerdal records regarding the AED are relevant to the Schronks' claims and admissible even against the City. *See Olympic Arms, Inc. v. Green*, 176 S.W.3d 567, 578 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (testimony of co-defendant gunsmith considered in product liability suit against manufacturer of defective rifle barrel).

Next, the City complains that Dr. Reese's affidavit is inadmissible because it is supported by a "random collection" of documents which are not properly identified or authenticated. We disagree. The affidavit specifically identifies the documents on which Dr. Reese relied. For example, Dr. Reese relied in paragraph 21 on "Defendant Laerdal's 'Incident Information' report (see LMC 03590, also marked Exhibit #30)." In paragraph 24, he referred to "the Med Watch Report [Mandatory Reporting FDA Form 3500A]" and provided citations to various "LMC" numbers[12] in this report which correspond to the pagination of the report attached as an exhibit to his affidavit.

---

[12] These "LMC" numbers apparently refer to Laerdal's pagination of the pertinent documents. They are similar to Bates stamp numbers.

Regarding the admissibility of the exhibits attached to Dr. Reese's affidavit, Rule of Evidence 703 provides in pertinent part, "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." TEX. R. EVID. 703. An expert in this case may reasonably rely on the records of the manufacturer to evaluate whether the product in question is defective. *Cf. Olympic Arms*, 176 S.W.3d at 578 (experts testified about rifle manufacturing process and about another defective rifle barrel produced by defendant at about same time). Therefore, the admissibility of the exhibits is irrelevant. *See* TEX. R. EVID. 703.

The City also complains that Dr. Reese's concluding statement renders his affidavit inadmissible because it does not provide a sufficiently specific statement of the bases for his opinion. The statement in question reads, "The opinions stated herein are based upon information provided by the Plaintiff and my knowledge and expertise with medical devices, the medical industry, and FDA Rules and Regulations." Standing alone, this probably would be insufficient. *Cf. Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 902, 911 (Tex. 2004) (expert's reliance on the "laws of physics" does not provide a sufficient basis for his opinion). However, Dr. Reese provided much more detail in the 15-plus pages preceding this concluding summary statement. In the body of his affidavit, Dr. Reese relied on specified federal regulations, specified portions of Laerdal's guidelines for use of the AED, Laerdal's incident information report, a mandatory FDA "Med Watch" report regarding the incident, and other specified documents. Therefore, his affidavit provided sufficient factual substantiation for his

expert opinion regarding whether the AED was defective. *See Merrell v. Wal-Mart Stores, Inc.*, 276 S.W.3d 117, 128 (Tex. App.—Texarkana 2009, pet. filed).

Finally, the City challenges Dr. Reese's qualifications to render an expert opinion on the cause of Helen Schronk's death. Dr. Reese is not a medical doctor. He has a doctor of philosophy degree in medical technology studies and holds certifications as a forensic examiner and a forensic consultant, a certification in forensic medicine, and certification as a "Level Five" medical investigator. He states in his affidavit that he is "a medical device expert." He states in his CV that his "competencies" include determining "if a causal relationship exists between a suspect medical device *and its manufacturer, distributor, physician, and/or hospital*." (emphasis added). Because Dr. Reese is not a medical doctor and because his affidavit and CV do not demonstrate any special experience in determining medical causation, we cannot say the court abused its discretion by determining that he is not qualified to render an expert opinion on cause of death. *See Methodist Health Ctr. v. Thomas*, No. 14-07-00085-CV, 2007 Tex. App. LEXIS 6655, at *8-9 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (mem. op.); *Marts ex rel. Marts v. Transp. Inc. Co.*, 111 S.W.3d 699, 703-04 (Tex. App.—Fort Worth 2003, pet. denied).

*General References to Exhibits*

The City objected to sections of the Schronks' response, beginning with paragraph 17, in which the Schronks refer to "ample proof" that the City's use of a malfunctioning AED was a proximate cause of Helen Schronk's death. Throughout several pages of the response beginning here, the Schronks generally refer to "exhibits

A-F with exhibits" or "exhibits A-G" without any more specificity. It appears that the Schronks sought to establish two things at this point in their response: (1) their petition alleged sufficient facts to state a waiver of immunity; and (2) they provided "ample proof" to support these allegations. The City contends that their general references to the exhibits do not constitute competent evidence of cause of death. To the extent the Schronks relied on these general references to show evidence of cause of death, we agree. *See State v. Life Partners, Inc.*, 243 S.W.3d 236, 242 (Tex. App.—Waco 2007, pet. denied) ("A general reference to a voluminous record that does not direct the trial court and parties to the evidence on which the movant relies is insufficient.") (quoting *Aguilar v. Morales*, 162 S.W.3d 825, 838 (Tex. App.—El Paso 2005, pet. denied)).

### *Dr. Desser's Affidavit*

The City objected that the affidavit of Dr. Kenneth Desser is inadmissible because: (1) it did not comply with Rule of Civil Procedure 194.2(f)(3) by providing a brief summary of the basis for Dr. Desser's opinion; (2) it contains internal conflicts; and (3) it fails to address undisputed evidence.[13]

Rule 194.2(f) governs disclosure of information regarding the opposing party's testifying experts. *See* TEX. R. CIV. P. 194.2(f). Under the trial court's scheduling order, the deadline for disclosure of testifying experts was December 7, 2007. The Schronks

---

[13] The City also objected that the Schronks could not rely on Dr. Desser's affidavit because he had not been timely designated as an expert witness. However, the trial court did not sustain this objection, and the City has not perfected its own appeal to challenge this ruling.

filed their supplemental response with Dr. Desser's affidavit and the court heard the City's plea to the jurisdiction eight days before that deadline.[14]

The City cites *Cunningham v. Columbia/St. David's Healthcare Sys., L.P.*, 185 S.W.3d 7 (Tex. App.—Austin 2005, no pet.), for the proposition that an expert's affidavit is not admissible summary-judgment evidence if the expert has not been properly designated under Rule 194.2. *Id.* at 12-13. The Supreme Court has recently endorsed this proposition. *Fort Brown Villas III Condominium Ass'n v. Gillenwater*, 52 Tex. Sup. Ct. J. 632, 633-34, 2009 Tex. LEXIS 125, at *3-7 (Tex. Apr. 17, 2009) (per curiam). However, we are unaware of any decision applying this same principle in the context of a plea to the jurisdiction, and we decline to do so.

Summary judgments are rendered where: (1) a plaintiff conclusively establishes each element of his claim; (2) a defendant conclusively negates a single element of a plaintiff's claim; or (3) a defendant conclusively establishes an affirmative defense. *See U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 165 (Tex. App.—Dallas 2008, no pet.); *Van Es v. Frazier*, 230 S.W.3d 770, 784 (Tex. App.—Waco 2007, pet. denied). Thus, a summary-judgment proceeding focuses on the merits of the plaintiff's claim or of an affirmative defense.

By contrast, "[a] plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Although the State or other

---

[14] The Schronks filed a formal designation of their experts, including Dr. Desser, on December 6.

governmental unit bears the burden of conclusively establishing that its immunity has not been waived, "we protect the plaintiffs from having to 'put on their case simply to establish jurisdiction.'" *Miranda*, 133 S.W.3d at 228 (quoting *Blue*, 34 S.W.3d at 554). "The purpose of a dilatory plea is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached." *Blue*, 34 S.W.3d at 554; *cf. Kelly v. Rendon*, 255 S.W.3d 665, 672 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (expert report in healthcare liability case "need not marshall all of the plaintiff's proof" and need not satisfy same admissibility standards as evidence offered in summary-judgment proceeding or at trial) (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878-79 (Tex. 2001)); *Baylor Univ. Med. Ctr. v. Rosa*, 240 S.W.3d 565, 570 (Tex. App.—Dallas 2007, pet. denied) (same).

Although evidence offered in support of or in response to a plea to the jurisdiction must satisfy the requirements of the *Rules of Evidence*, we hold that an expert need not be properly designated under *Rule of Civil Procedure* 194.2 before he can offer evidence relevant to the jurisdictional issues in dispute. This is particularly true when, as here, the deadline for designation of testifying experts had not passed.

Finally, the City objected to Dr. Desser's affidavit because it has internal conflicts and fails to address undisputed evidence. Here, the City refers primarily to Dr. Desser's assumption that there was "a 6 minute delay from cardiac arrest to attempted electrical defibrillation" while other evidence in the record suggests that the period of delay may have been more than 20 minutes. However, these complaints go to the credibility of Dr. Desser's statements and not the admissibility of his affidavit.

If a party provides inconsistent or conflicting summary judgment proof, that party has created a fact issue for the trier of fact to resolve. As the Supreme Court has stated, "If the motion involves the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion should not be granted."

*Thompson v. City of Corsicana Hous. Auth.*, 57 S.W.3d 547, 557 (Tex. App.—Waco 2001, no pet.) (quoting *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965)) (other citations omitted); *accord Pierce v. Washington Mut. Bank*, 226 S.W.3d 711, 717-18 (Tex. App.—Tyler 2007, pet. denied); *Shaw v. Maddox Metal Works, Inc.*, 73 S.W.3d 472, 478 (Tex. App.—Dallas 2002, no pet.); *Larson v. Family Violence & Sexual Assault Prevention Ctr. of S. Tex.*, 64 S.W.3d 506, 513 (Tex. App.—Corpus Christi 2001, pet. denied). We have previously applied this principle in an appeal involving a plea to the jurisdiction in which a political subdivision claimed immunity from suit. *See Stewart v. City of Corsicana*, 211 S.W.3d 844, 849-50 (Tex. App.—Waco 2006), *rev'd on other grounds*, 249 S.W.3d 412 (Tex. 2008).

Accordingly, the court abused its discretion by sustaining the City's objections to Dr. Desser's affidavit.

### *Summary*

The trial court did not abuse its discretion when it sustained the City's objections that: (1) the firefighters were improperly testifying regarding legal conclusions; (2) Dr. Reese was not qualified to render an expert opinion on Helen's cause of death; and (3) the Schronks provided general references to their supporting evidence to show cause of death. The trial court abused its discretion when it sustained the City's objections that: (1) the Schronks provided only selected excerpts of deposition testimony in the body of

their response to the plea to the jurisdiction; (2) the firefighters were improperly testifying regarding factual conclusions; (3) Dr. Reese's affidavit was otherwise objectionable; and (4) Dr. Desser's affidavit was inadmissible. Accordingly, we sustain the Schronks' fourth point in part and overrule it in part.

**Plea to the Jurisdiction**

The Schronks contend in their third point that the court erred by granting the City's plea to the jurisdiction. As we have already observed, the primary focus of the City's plea to the jurisdiction is whether the use of the AED was a proximate cause of Helen's death.

When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we "take as true all evidence favorable to the [plaintiffs]" and "indulge every reasonable inference and resolve any doubts in the [plaintiffs'] favor." *Miranda*, 133 S.W.3d at 228; *Johnson v. Johnson County*, 251 S.W.3d 107, 109 (Tex. App.—Waco 2008, pet. denied). To avoid dismissal, the plaintiffs must "show that there is a disputed material fact regarding the jurisdictional issue." *Miranda*, 133 S.W.3d at 228.

Section 101.021(2) waives a governmental unit's immunity from suit and liability for personal injury or death proximately caused by a condition or use of tangible personal property if a private person would be liable under the same circumstances. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(2), 101.025(a) (Vernon 2005); *City of Grapevine v. Sipes*, 195 S.W.3d 689, 691-92 (Tex. 2006); *Wise Reg'l Health Sys. v. Brittain*, 268 S.W.3d 799, 807 (Tex. App.—Fort Worth 2008, no pet.).

The City relies on cases distinguishing "use" and "non-use" of tangible personal property with the former being necessary to waive immunity. *See, e.g., Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001) ("our cases have distinguished claims involving the failure to use, or the non-use of property, which do not waive sovereign immunity, from claims involving a 'condition or use' of tangible personal property that causes injury, which do effect a waiver"). "'Use' means 'to put or bring into action or service; to employ for or apply to a given purpose.'" *Id.* at 588 (quoting *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001)). Here, there is no dispute that City firefighters "used" the AED in an effort to resuscitate Helen. The primary dispute is whether their use of this AED was a proximate cause of Helen's death.

*Proximate Cause*

The Schronks cite *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30 (Tex. 1983),[15] and related authorities for the proposition that the requisite causation is established by evidence that the use of the AED was "a contributing factor" to Helen's death. *See id.* at 32. The City responds by citing *Miller* for the proposition that the use of the AED must have "actually caused" Helen's death. *See Miller*, 51 S.W.3d at 588 (citing *White*, 46 S.W.3d at 869). The correct standard of causation lies somewhere in between. *See Wise*

---

[15] The Supreme Court has "limited [*Salcedo*] to its facts." *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 342 (Tex. 1998). There is a vigorous debate among the intermediate appellate courts about the continuing viability of *Salcedo*. *Compare Tex. Tech. Univ. Health Sciences Ctr. v. Lucero*, 234 S.W.3d 158, 168-72 (Tex. App.—El Paso 2007, pet. denied), *with Anderson v. City of San Antonio*, 120 S.W.3d 5, 7-9 (Tex. App.—San Antonio 2003, pet. denied). However, we need not wade into that fray. The statute establishes the requisite causation as "proximate cause." Tex. Civ. Prac. & Rem. Code Ann. § 101.021; *City of Grapevine v. Sipes*, 195 S.W.3d 689, 691-92 (Tex. 2006); *Wise Reg'l Health Sys. v. Brittain*, 268 S.W.3d 799, 807 (Tex. App.—Fort Worth 2008, no pet.). We will apply settled precedent defining the term "proximate cause."

*Reg'l Health Sys.*, 268 S.W.3d at 808 ("The causation requirement in section 101.021(2) is one of proximate cause—not a heightened standard such as sole cause."); *Univ. of Tex. Med. Branch v. Estate of Blackmon*, 169 S.W.3d 712, 717 (Tex. App.—Waco 2005) ("The court in *White* did not expressly or implicitly abandon the TTCA's proximate-cause requirement for a different standard such as immediate cause, direct cause, or sole cause."), *vacated on other grounds*, 195 S.W.3d 98 (Tex. 2006) (per curiam).

Section 101.021 provides that "proximate cause" is the applicable standard. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1) ("proximately caused"), § 101.021(2) ("so caused"); *see Sipes*, 195 S.W.3d at 691-92; *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 342-43 (Tex. 1998); *Wise Reg'l Health Sys.*, 268 S.W.3d at 807. "Proximate cause includes both cause in fact and foreseeability."[16] *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 246 (Tex. 2008). "In particular, cause in fact requires that the allegedly negligent act or omission constitute 'a substantial factor in bringing about the injuries, and without it, the harm would not have occurred.'" *Id.* (quoting *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004)). This principle has been applied in cases governed by the Tort Claims Act, although not consistently. *See, e.g., Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992); *Wise Reg'l Health Sys.*, 268 S.W.3d at 807; *Ordonez v. El Paso County*, 224 S.W.3d 240, 244 (Tex. App.—El Paso 2005, no pet.).

---

[16]     The City contends that the use of the AED was not a cause in fact of Helen's death. The issue of foreseeability is not before us.

Cause in fact is proven in negligence cases involving injury or death by evidence that the injury or death was in "reasonable medical probability" or in "reasonable probability" caused by the defendant's negligent act or omission.[17] *Park Place Hosp. v. Est. of Milo*, 909 S.W.2d 508, 511 (Tex. 1995); *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 400 (Tex. 1993); *see Columbia Rio Grande Healthcare, L.P. v. Hawley*, 52 Tex. Sup. Ct. J. 804, 808, 2009 Tex. LEXIS 323, at *16 (Tex. June 5, 2009). This means "simply that it is 'more likely than not' that the ultimate harm or condition resulted from such negligence." *Kramer*, 858 S.W.2d at 400 (quoting *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 707 (Tex. 1970)); *accord Thomas v. Farris*, 175 S.W.3d 896, 899 (Tex. App.—Texarkana 2005, pet. denied); *Marvelli v. Alston*, 100 S.W.3d 460, 480 (Tex. App.—Fort Worth 2003, pet. denied).

The Supreme Court has explained in more detail how this requirement is met "where preexisting illnesses or injuries have made a patient's chance of avoiding the ultimate harm improbable even before the allegedly negligent conduct occurs—*i.e.*, the patient would die or suffer impairment anyway." *Kramer*, 858 S.W.2d at 400; *Arredondo v. Rodriguez*, 198 S.W.3d 236, 239 (Tex. App.—San Antonio 2006, no pet.); *Hodgkins v. Bryan*, 99 S.W.3d 669, 673 (Tex. App.—Houston [14th Dist.] 2003, no pet.). In this instance, "recovery is barred when the defendants' negligence deprived the [plaintiff] of only a fifty percent or less chance of survival." *Park Place Hosp.*, 909 S.W.2d at 511 (citing *Kramer*, 858 S.W.2d at 400); *Arredondo*, 198 S.W.3d at 239; *accord Columbia Rio*

---

[17] Although these precise terms need not be used, the evidence must demonstrate "to a reasonable degree of medical certainty" that the injury or death was caused by the defendant's negligence. *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 247 (Tex. 2008).

*Grande Healthcare*, 52 Tex. Sup. Ct. J. at 808, 2009 Tex. LEXIS 323, at *17; *Hodgkins*, 99 S.W.3d at 673.

Here, it is undisputed that City employees actually used the AED in an attempt to resuscitate Helen. It is likewise undisputed that the AED did not work because the battery did not have a sufficient charge. Thus, the "dispositive issue as to the claims against the [City] is whether [Helen] could have survived if [a properly functioning AED had been used]." *See Park Place Hosp.*, 909 S.W.2d at 511; *Arredondo*, 198 S.W.3d at 239.

The City refers to alleged "judicial admissions" by the Schronks' counsel as establishing that the use of the AED was not a proximate cause of Helen's death.[18] The two statements are: "There's no contention the AED caused the underlying heart condition"; and "there's not been any allegations by anyone that the AED itself killed her or caused her to die."

"A judicial admission must be a clear, deliberate, and unequivocal statement." *Givens v. Ward*, 272 S.W.3d 63, 70 (Tex. App.—Waco 2008, no pet.) (quoting *Horizon/CMS Healthcare*, 34 S.W.3d at 905). The first quoted statement, which refers to Helen's "underlying heart condition," does not constitute "a clear, deliberate, and unequivocal statement" that the use of the AED was not a proximate cause of her death.

---

[18] The Schronks allege for the first time on appeal that the City judicially admitted causation in its defensive pleadings by stating that Laerdal's negligent design, etc. of the AED "was a proximate cause or the proximate cause of the incident, injuries and death and damages at issue." However, the Schronks did not rely on this "admission" in the trial court as a basis for denial of the City's plea to the jurisdiction or Laerdal's summary-judgment motion. Because they did not raise it in the trial court, they cannot rely on it on appeal. *See Sherman v. Merit Office Portfolio, Ltd.*, 106 S.W.3d 135, 140-41 (Tex. App.—Dallas 2003, pet. denied); *Smith v. Altman*, 26 S.W.3d 705, 709 (Tex. App.—Waco 2000, pet. dism'd w.o.j.).

The second statement must be read in context with a follow-up statement by counsel, namely, "What's been alleged by the plaintiffs in this case is that the AED didn't work and so therefore she couldn't be rescued from her ventrical fibrillation." When read in context, this second statement likewise does not constitute "a clear, deliberate, and unequivocal" admission. Thus, the statements in question do not constitute judicial admissions. *See id.*

Dr. Desser concludes in his report that "[t]o a reasonable degree of medical probability exceeding 51%, Mrs. Schronk would have been successfully defibrillated had the Laerdal Heartstart 911 automatic electrical defibrillator functioned appropriately." This conclusion was based on his review of the medical records, the fire department records including the monitor strip from the AED, the deposition testimony of various firefighters who responded to the Schronks' home, and "[p]opulation-based cohort studies."

Dr. Desser explains that a "10% increment of ventricular fibrillation mortality per minute without electrical defibrillation statistic applies to subjects who are not undergoing cardiopulmonary resuscitation by a bystander who is trained in the technique." He notes, however, that Helen did receive CPR from a trained EMT. He opines that the performance of CPR while awaiting the AED "would, to a reasonable degree of medical probability, have increased her chance of successful electrical defibrillation and survival to over 51%." He describes this as "a conservative estimate since success rates for non-physician bystanders who are trained in [CPR] in combination with electrical defibrillation has [sic] a success rate which exceeds 80%."

Desser noted that this survival rate is based on "data which has been accumulated from free-standing cardiac rehabilitation units where cardiac arrests have occurred in subjects with serious cardiovascular disorders." He also observed that the survival rate is "even higher" for "non-medical environments with access to [EMT's] and defibrillators."

To summarize, Desser took into account Helen's heart condition before she suffered the cardiac arrest, examined studies regarding cardiac patients who received CPR "in combination with electrical defibrillation," and concluded that, in reasonable medical probability, there is a better than 51% chance that Helen would have been successfully defibrillated and would have survived her cardiac arrest if the AED had functioned properly.

Because we "take as true all evidence favorable to the [Schronks]" and "indulge every reasonable inference and resolve any doubts in [their] favor," we conclude "that there is a disputed material fact" regarding whether the use of the AED was a proximate cause of Helen's death. *See Bustillos v. Rowley*, 225 S.W.3d 122, 129-31 (Tex. App.—El Paso 2005, no pet.) (expert report that it was "more likely than not" that patient would have survived adequately addressed causation regarding failure to monitor cardiac patient); *Marvelli*, 100 S.W.3d at 481 (expert's testimony that plaintiff's vision would have "in reasonable medical probability" been saved held legally sufficient to establish cause-in-fact); *Bottoms v. Smith*, 923 S.W.2d 247, 251-52 (Tex. App.—Houston [14th Dist.] 1996, no writ) (expert's testimony that, if appropriate tests had been done, polyp would have been identified and patient would have better than

70% survival rate held sufficient to create fact issue on proximate cause regarding patient's death).

*Exception for Emergency Responders*

According to section 101.055(2) of the Tort Claims Act, there is no waiver of immunity under the Act[19] for the conduct of an emergency responder "if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others." TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2) (Vernon 2005). The Schronks argue that in this instance the City's failure to maintain the AED in accordance with the manufacturer's guidelines constitutes a violation of law (section 779.003 of the Health and Safety Code) and removes the conduct of the emergency responders from the exception provided by section 101.055(2).

Section 779.003 states, "A person or entity that owns or leases an automated external defibrillator shall maintain and test the automated external defibrillator according to the manufacturer's guidelines." TEX. HEALTH & SAFETY CODE ANN. § 779.003 (Vernon 2003). This statute is found in title 9, subtitle B of the Health and Safety Code. *See* Act of May 26, 1999, 76th Leg., R.S., ch. 679, § 1, 1999 Tex. Gen. Laws 3250. Title 9 is entitled "Safety" and subtitle B is entitled "Emergencies." *See* Act of May 18,

---

[19] Neither section 101.055 nor section 101.062, which we discuss hereinafter, provides an independent waiver of immunity. Rather, even if a waiver of immunity is established under section 101.021, a governmental unit may nonetheless retain its immunity if it meets the requisites of section 101.055 or section 101.062. *See Gipson v. City of Dallas*, 247 S.W.3d 465, 470-71 (Tex. App.—Dallas 2008, pet. denied); *City of El Paso v. Hernandez*, 16 S.W.3d 409, 415-16 (Tex. App.—El Paso 2000, pet. denied).

1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2235 (table of contents). Subtitle B also includes statutory provisions governing, among other things, "emergency communications," "emergency medical services," and "emergency services districts." *Id.* Thus, we hold that section 779.003 is a law "applicable to emergency action." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2); *Mejia v. City of San Antonio*, 759 S.W.2d 198, 200 (Tex. App.—San Antonio 1988, no writ).

The Schronks presented the deposition testimony of several firefighters detailing how the Burleson Fire Department failed to maintain the AED in accordance with the manufacturer's guidelines. Taking as true all evidence favorable to the Schronks and indulging every reasonable inference and resolving any doubts in their favor, we conclude "that there is a disputed material fact" regarding whether the City failed to comply with a law "applicable to emergency action." *See Mejia*, 759 S.W.2d at 200-01.

*Exception for 9-1-1 Emergency Services*

According to section 101.062 of the Tort Claims Act, there is a waiver of immunity for:

> a claim against a public agency that arises from an action of an employee of the public agency or a volunteer under direction of the public agency and that involves providing 9-1-1 service or responding to a 9-1-1 emergency call only if the action violates a statute or ordinance applicable to the action.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.062(b) (Vernon 2005).

Under section 101.062(b), the City's immunity is waived only if the Schronks' claims arise from the action of a City employee (1) "that involves . . . responding to a 9-1-1 emergency call" and (2) that "violates a statute or ordinance applicable to the

action." Here, the Department's maintenance of the AED is directly involved with its response to 9-1-1 calls. As noted, the Schronks have presented evidence that the Department failed to maintain the AED in accordance with the manufacturer's guidelines, which would be a violation of section 779.003.

Taking as true all evidence favorable to the Schronks and indulging every reasonable inference and resolving any doubts in their favor, we conclude "that there is a disputed material fact" regarding whether an action of a City employee that involved responding to a 9-1-1 call violated a statute applicable to the action. *See City of Dallas v. Porter*, No. 05-02-00364-CV, 2002 Tex. App. LEXIS 5658, at *7-10 (Tex. App.—Dallas Aug. 2, 2002, no pet.) (not designated for publication).

*Summary*

The Schronks presented evidence raising "a disputed material fact" regarding whether the City's use of the AED was a proximate cause of Helen's death, whether the City failed to comply with a "law[ ] applicable to emergency action," and whether an action of a City employee that involved responding to a 9-1-1 call violated a statute applicable to the action. Therefore, the court erred by granting the City's plea to the jurisdiction. We sustain the Schronks' third point.

**Summary Judgment**

The Schronks contend in their first point that the court erred by granting Laerdal's summary-judgment motion. In particular, they argue: (1) the trial court granted only Laerdal's traditional summary-judgment motion; (2) Laerdal's motion addressed only their negligence claim and thus summary judgment was improper on

their strict product liability claim; and (3) genuine issues of material fact remain on both claims. Laerdal also presents a procedural issue, contending that Dr. Reese's affidavit cannot be considered part of the summary-judgment record on appeal because the trial court sustained the City's objections to the affidavit.

*Standards of Review*

In reviewing a traditional summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (citing *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam); *City of Keller v. Wilson*, 168 S.W.3d 802, 822-24 (Tex. 2005)). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the movant. *See Goodyear Tire*, 236 S.W.3d at 756 (citing *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam); *Spates*, 186 S.W.3d at 568).

We apply the same standard in reviewing a no-evidence summary judgment as we would in reviewing a directed verdict. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006). "We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id.* at 582. A no-evidence summary judgment will be defeated if the nonmovant produces some

evidence "raising an issue of material fact" on the elements challenged by the movant. *Id.*

*Procedural Issues*

Laerdal filed a summary-judgment motion presenting both no-evidence and traditional grounds. They entitled this pleading "Defendant Laerdal Medical Corp.'s Motion for Summary Judgment and No Evidence Motion for Summary Judgment." With regard to the Schronks' negligence claims, Laerdal alleged that there was no evidence that: (1) the AED or its battery was "defectively manufactured, designed, supplied, sold or marketed to the City"; or (2) any act or failure to act on Laerdal's part was a proximate cause of Helen's injuries. With regard to the Schronks' strict product liability claim, Laerdal alleged that there was no evidence that the AED or its battery was defective. As a traditional ground for summary judgment, Laerdal alleged that the "undisputed evidence demonstrates neither the HeartStart 911 AED or the accompanying battery used during the attempted resuscitation were defective."

In the Schronks' summary-judgment response, they argued that genuine issues of material fact remained concerning whether: (1) the AED malfunctioned according to FDA regulations; (2) the AED battery was "misbranded" (*i.e.*, mislabeled) under FDA regulations regarding replacement of batteries; (3) Laerdal failed to provide adequate training and service to the City regarding battery maintenance; and (4) these were proximate causes of Helen's death.

In its order granting summary judgment, the court stated that it had considered and was granting the "Motion for Summary Judgment." The court rendered judgment

that the Schronks take nothing on their claims against Laerdal. The Schronks first contend that, in view of the two-part title Laerdal gave to its summary-judgment pleading, the court's reference to the "Motion for Summary Judgment" is necessarily a reference to only the traditional grounds for summary judgment stated in the motion. We disagree.

At the summary-judgment hearing, the court informed the parties that it wanted to hear "Laerdal's Motion for Summary Judgment." Laerdal's counsel promptly advised the court that Laerdal's motion encompassed both traditional grounds and no-evidence grounds for summary judgment. The Schronks did not object to this characterization. Thus we hold that the trial court's order granted both the traditional and no-evidence portions of Laerdal's summary-judgment motion. This holding also answers the Schronks' next argument, namely, that the court granted summary judgment only on the Schronks' negligence claim because that is the only claim challenged by the traditional portion of Laerdal's summary-judgment motion.

Laerdal contends that Dr. Reese's affidavit is not part of the summary-judgment record because the trial court sustained the City's objections to the affidavit. Laerdal filed written objections to Dr. Reese's affidavit but did not call those objections to the trial court's attention at the summary-judgment hearing and did not obtain a ruling on the objections.[20]

---

[20]    Laerdal also filed written objections to Dr. Desser's affidavit but did not call those objections to the trial court's attention at the summary-judgment hearing and did not obtain a ruling on the objections. Laerdal does not challenge the admissibility of Dr. Desser's affidavit on appeal.

Objections to the form of summary-judgment evidence are preserved for appellate review only if those objections are made and ruled on in writing by the trial court. *See Choctaw Props.*, 127 S.W.3d at 241; *Trusty v. Strayhorn*, 87 S.W.3d 756, 762 (Tex. App.—Texarkana 2002, no pet.). By contrast, objections to the substance of such evidence may be raised for the first time on appeal. *See Choctaw Props.*, 127 S.W.3d at 241; *Trusty*, 87 S.W.3d at 765.

We assume without deciding that Laerdal may rely on the City's objections and the court's rulings thereon. As we have determined, however, the only objection which the trial court properly sustained was the objection that Dr. Reese was not qualified to give an expert opinion on Helen's cause of death. Nevertheless, because Laerdal's primary objection is that Dr. Reese's affidavit is conclusory, we may consider that objection for the first time on appeal because it challenges the substance of the evidence. *Id.*

Laerdal contends that Dr. Reese's affidavit is conclusory because it is "not based on anything remotely related to the facts," because it is "instead based solely on his own conjecture and conclusions," and because there is "no evidence he inspected, evaluated or tested the device or battery in question." Because Laerdal makes only these general objections and provides scant argument or authority,[21] we limit our analysis to the issue

---

[21]    Laerdal's argument and authority on the allegedly conclusory nature of Dr. Reese's affidavit is contained in a footnote in its brief which reads as follows:

> Mr. Reese's affidavit failed to satisfy Appellants' burden because Mr. Reese cannot establish that the AED battery, had it been properly charged, would not have functioned appropriately. His affidavit was wholly conclusive, not based on anything remotely related to the facts, instead based solely on his own conjecture and conclusions. There is

of whether Dr. Reese's affidavit is conclusory because he did not personally inspect the AED or its battery. Summary-judgment evidence is considered "conclusory" if it "does not provide the underlying facts to support the conclusion." *Choctaw Props.*, 127 S.W.3d at 242 (quoting *Dolcefino*, 19 S.W.3d at 930)).

Under Rule of Evidence 703, an expert's opinion may be based on facts or data "perceived by, reviewed by, or made known to the expert at or before the hearing." TEX. R. EVID. 703. Such facts or data need not be admissible in evidence if they are "of a type reasonably relied upon by experts in the particular field." *Id.* Personal knowledge of the underlying facts or data is not required. *See id.* 602, 703; *Henderson v. State*, 14 S.W.3d 409, 412 (Tex. App.—Austin 2000, no pet.); 2 STEVEN GOODE ET AL., GUIDE TO THE TEXAS RULES OF EVIDENCE § 703.3 (3d ed. 2002). Thus, it is not necessary for a testifying expert to have personally inspected an object as a prerequisite to offering expert testimony regarding that object. *See SPT Fed. Credit Union v. Big H Auto Auction, Inc.*, 761 S.W.2d 800, 802-03 (Tex. App.—Houston [1st Dist.] 1988, no writ) (expert permitted to testify to value of shrimp boat even though he had never inspected or viewed the boat). That the expert had not personally inspected the object would go to the weight of his testimony and not its admissibility. *See LMC Complete Automotive, Inc. v. Burke*, 229 S.W.3d 469, 478 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("The weakness of facts in support of an expert's opinion generally goes to the weight of the testimony rather than the admissibility.").

---

further no evidence he inspected, evaluated or tested the device or battery in question. (C.R. V7, 1461) Laerdal continues to assert these substantive objections to this Court and argues that, as such, Mr. Reese's Affidavit is not competent summary judgment evidence. *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

Accordingly, we reject Laerdal's challenge to the admissibility of Dr. Reese's affidavit.

*Defective Product*

The Schronks contend that genuine issues of material fact remain on the question of whether the AED or its battery was defective.[22] Laerdal alleged in its summary-judgment motion that: (1) the evidence conclusively establishes that the AED and its battery were not defective and were "fully functional and operational" on the occasion in question; and (2) there is no evidence that (a) the AED or its battery was defective or (b) the AED or its battery was "defectively manufactured, designed, supplied, sold or marketed to the City."

The Schronks relied primarily on Dr. Reese's affidavit in their summary-judgment response to establish that the AED was defective. They assert essentially four defects: (1) the AED malfunctioned because it did not provide defibrillating shocks after giving a "low battery" warning; (2) the AED malfunctioned because it never gave a "replace battery" warning; (3) the AED battery is misbranded because it is labeled with a "recommended replacement" date rather than an "expiration date"; and (4) the AED battery is misbranded because its labeling is not sufficiently prominent.

According to pertinent FDA regulations:

---

[22] The Schronks' defective product claim is based on section 402A of the Restatement (Second) of Torts. *See* RESTATEMENT (SECOND) OF TORTS § 402A (1965). The elements for a strict product liability claim under section 402A are: (1) a product defect; (2) that existed at the time the product left the manufacturer's hands; (3) made the product unreasonably dangerous; and (4) was a producing cause of the plaintiff's injuries. *Parsons v. Ford Motor Co.*, 85 S.W.3d 323, 329 (Tex. App.—Austin 2002, pet. denied).

"Malfunction" means the failure of a device to meet its performance specifications or otherwise perform as intended. Performance specifications include all claims made in the labeling for the device. The intended performance of a device refers to the intended use for which the device is labeled or marketed, as defined in § 801.4 of this chapter.

21 C.F.R. § 803.3.

Section 301 of the Federal Food, Drug and Cosmetic Act prohibits the sale or distribution of "misbranded"[23] drugs and medical devices.[24]  21 U.S.C.S. § 331(a) (LexisNexis 2006).  Section 502 defines a "misbranded" drug or device in pertinent part as follows:

False or misleading label.  If its labeling is false or misleading in any particular.

Prominence of information on label.  If any word, statement, or other information required by or under authority of this Act [21 USCS §§ 301 et seq.] to appear on the label or labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

Restricted devices using false or misleading advertising or used in violation of regulations.  In the case of any restricted device distributed or offered for sale in any State, if (1) its advertising is false or misleading in any particular, or (2) it is sold, distributed, or used in violation of regulations prescribed under section 520(e) [21 USCS § 360j(e)].

---

[23]     A claim that a drug or medical device is "misbranded" is in essence a marketing defect claim. *See, e.g., Merck & Co. v. Garza*, 277 S.W.3d 430, 437 (Tex. App.—San Antonio 2008, pet. filed).

[24]     It is undisputed that an AED is a medical device governed by the Federal Food, Drug and Cosmetic Act.  *See United States v. Laerdal Mfg. Corp.*, 853 F. Supp. 1219, 1238 (D. Or. 1994), *aff'd*, 73 F.3d 852 (9th Cir. 1995).

*Id.* § 352(a), (c), (q) (LexisNexis 2006); *see also* TEX. HEALTH & SAFETY CODE ANN. § 431.112(a)(1), (c), (o) (Vernon Supp. 2008) (similar definitions for misbranded drug or device in Texas Food, Drug, and Cosmetic Act).

Dr. Reese noted that, according to the instruction manual for the AED, "a low battery signal indicates that there is sufficient energy remaining in the battery to allow four (4) additional shocks." Firefighter Burchett testified that when the AED indicated that a defibrillating shock should be administered to Helen, the AED "said audibly 'Low Battery'" but failed to administer a shock. The evidence is undisputed that the AED never administered a defibrillating shock on that occasion.

Dr. Reese also observed that, according to the instruction manual, "when the battery does not have enough charge to allow four (4) additional shocks, the device will signal a "Replace Battery warning."[25] According to Laerdal records, the AED gave a "low battery warning" each time it failed to administer a shock "and then powered down because of a low battery, notated on the printout as 'BAT.FAIL.'" The instruction manual explains that "BAT.FAIL" indicates that the AED has shut down because of a low battery. The Laerdal incident report does not indicate that the "REPLACE BATTERY" warning was given on the occasion in question.

---

[25] Section 4.8.2 of the instruction manual provides in pertinent part, "If three more charge-to-shock cycles are initiated after the 'BATTERY LOW' warning, a 'REPLACE BATTERY' warning will be given." "'REPLACE BATTERY' indicates that there may not be enough capacity in the battery to deliver another shock."

Dr. Reese opines that these failures of the AED to perform in accordance with the instruction manual constitute "malfunctions" as defined by 21 C.F.R. § 803.3.[26]

Viewing the evidence in the light most favorable to the Schronks and indulging every reasonable inference and resolving any doubts in their favor, we hold that the Schronks produced some evidence "raising an issue of material fact" on the question of whether the AED malfunctioned.

With regard to the Schronks' "misbranding" claims, they first complain that the AED battery label is misleading because it is labeled with a "recommended replacement" date rather than an "expiration date." According to the deposition testimony of Laerdal employee Linda Riedeburg, the pertinent portion of the battery label has a box with the printed notation "Recommended Replacement" beside it. Riedeburg examined an enlarged photograph of the battery label and testified that the box beside the "recommended replacement" notation was blank, that is, it did not provide a recommended replacement date.

Dr. Reese opined that the use of the term "recommended replacement" or "recommend replacement" instead of "expiration date" is misleading. According to Dr. Reese:

> The use of these terms is potentially hazardous and even life threatening because in order to assure that the AED's are capable of functioning in response to their design objective intent, these batteries **MUST** be changed no later than upon an identified "Expiration Date" of no more than two (2)

---

[26] Because the Schronks seek only to enforce federal regulations for medical devices in their suit, their product liability claims are not preempted by the FDCA. *See Riegel v. Medtronic, Inc.*, ___ U.S. ___, 128 S. Ct. 999, 1011, 169 L. Ed. 2d 892 (2008) (FDCA "does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements").

years. The terms "Recommended Replacement" or "Recommend Replacement" are clearly subjective, open-ended and not interpreted as a mandatory requirement by Laerdal, which in reality it is.

The instruction manual provides, "Replace batteries every two years. Check date codes on a regular basis." However, Battalion Chief Tom Foster testified in his deposition that, when he contacted Laerdal about ordering new batteries, a Laerdal representative informed him that the AED batteries had "a seven-year shelf life." Foster understood this to mean that the "[b]atteries were good for seven years."

A medical device is "misbranded" if "its labeling is false or misleading in any particular." 21 U.S.C.S. § 352(a).

> If an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the articles to which the labeling or advertising relates under the conditions of use prescribed in the labeling or advertising thereof or under such conditions of use as are customary or usual.

*Id.* § 321(n) (LexisNexis 2006). Thus, Laerdal's representations are relevant to this inquiry.

> The [FDCA] is plain and direct. Its comprehensive terms condemn every statement, design and device which may mislead or deceive. Deception may result from the use of statements not technically false or which may be literally true. The aim of the statute is to prevent that resulting from indirection and ambiguity, as well as from statements which are false. It is not difficult to choose statements, designs and devices which will not deceive. Those which are ambiguous and liable to mislead should be read favorably to the accomplishment of the purpose of the act.

*United States v. Ninety-Five Barrels (More or Less) Alleged Apple Cider Vinegar*, 265 U.S. 438, 442-43, 44 S. Ct. 529, 531, 68 L. Ed. 1094 (1924); *accord United States v. An Article . . . ACU-DOT*, 483 F. Supp. 1311, 1315 (N.D. Ohio 1980); Edward M. Basile et al., *Medical Device Labeling and Advertising: An Overview*, 54 FOOD & DRUG L.J. 519, 521 (1999).

Viewing the evidence in the light most favorable to the Schronks and indulging every reasonable inference and resolving any doubts in their favor, we hold that genuine issues of material fact remain on the question of whether the AED battery is misbranded because of the manner in which the replacement date is indicated on the label. *Cf. United States v. Jamieson-McKames Pharms., Inc.*, 651 F.2d 532, 545-46 (8th Cir. 1981) (drugs misbranded because labels depicted false expiration date).

The Schronks also contend that the AED battery is misbranded because its labeling is not sufficiently prominent. A drug or medical device does not satisfy the prominence requirements of the FDCA if "the information is presented in type that is too small, fades into the background, is obscured, or crowded with other graphic matter." Basile, *supra*, 54 FOOD & DRUG L.J. at 522-23 (citing 21 C.F.R. § 801.15(a)(6)). A drug or medical device also fails to satisfy these requirements if required information does not "appear on the part or panel of the label which is presented or displayed under customary conditions of purchase." 21 C.F.R. § 801.15(a)(1).

Laerdal employee Riedeburg testified that the box beside the "recommended replacement" notation was blank, that is, it did not provide a recommended replacement date. Viewing the evidence in the light most favorable to the Schronks and indulging every reasonable inference and resolving any doubts in their favor, we hold

that genuine issues of material fact remain on the question of whether the AED battery is misbranded because it does not depict an expiration date. *See United States v. Dino*, 919 F.2d 72, 75 (8th Cir. 1990) (sample drugs misbranded because they were not marked with lot numbers or expiration dates).

Thus, genuine issues of material fact remain on the questions of whether the AED or its battery was defective and whether the AED or its battery was "defectively manufactured, designed, supplied, sold or marketed to the City."

*Causation*

Laerdal alleged in its summary-judgment motion that it is entitled to judgment on the Schronks' negligence claim because there is no evidence any act or failure to act on Laerdal's part was a proximate cause of Helen's injuries.

The Schronks allege, among other things, that Laerdal was negligent because it: (1) failed to properly train employees of the City on maintenance, testing and upkeep of the AED and/or its batteries; (2) advised Battalion Chief Foster that the batteries were good for seven years; and (3) failed to label the batteries with expiration dates. Battalion Chief Foster testified that the AED batteries were not replaced every two years because Laerdal advised that they were good for seven years.

Dr. Reese opined that Laerdal's negligence resulted in the AED not "being fully functional" and "denied life saving therapy" to Helen. Dr. Desser concluded that, in reasonable medical probability, there is a better than 51% chance that Helen would have been successfully defibrillated and would have survived her cardiac arrest if the AED had functioned properly.

Viewing the evidence in the light most favorable to the Schronks and indulging every reasonable inference and resolving any doubts in their favor, they produced some evidence "raising an issue of material fact" on the question of whether Laerdal's negligence was a proximate cause of Helen's death.

We sustain the Schronks' first point.

## Conclusion

The trial court erred by granting the City's plea to the jurisdiction and by granting Laerdal's summary-judgment motion. Accordingly, we reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
     (Chief Justice Gray dissenting in part
     and concurring in part with note)*
Reversed and remanded
Opinion delivered and filed July 22, 2009
[CV06]

\* (Chief Justice Gray dissents in part and concurs in part with the judgment of the Court. A separate opinion will not issue. He notes, however, that the claims against the City of Burleson were properly dismissed. The claim is based entirely on the fact that the AED the fire department first attempted to use did not work properly. As such, it is either a suit for the failure to use a working AED device--in essence non-use of tangible personal property which is not actionable. In the alternative, it was for the use of an AED that did not work. But it is undisputed that the AED device did not cause her death. The Court gets around this problem by finding the Fire Department violated the law in an emergency by failing to properly check or test the AED batteries. But that negligence, if any, was not part of the emergency, and the waiver of immunity for such

activity is not implicated--if anything, it was simple negligence of a governmental employee for which sovereign immunity is not waived. For these and other reasons, I join no part of the Court's opinion and respectfully dissent to that portion of the judgment which reverses the judgment in favor of the City of Burleson. And though I join no part or portion of the opinion, I concur in the reversal of the judgment to the extent it reverses and remands the judgment in favor of Laerdal for further proceedings.)